Filed 4/24/13  P. v. Garcia CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>　Plaintiff and Respondent,<br><br>v.<br><br>GILBERT GARCIA, JR.,<br><br>　Defendant and Appellant. | 2d Crim. No. B232129<br>(Super. Ct. No. 1284555)<br>(Santa Barbara County) |

Gilbert Garcia, Jr., appeals the judgment following his conviction for first degree murder (Pen. Code, §§ 187/189)[1], and shooting at an occupied vehicle (§ 246). The jury found allegations to be true that the offenses were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)), and that a principal personally and intentionally discharged a firearm (§ 12022.53, subd. (e)).  Garcia was sentenced to 25 years to life for the murder plus 25 years to life on the firearm enhancement.  Sentences of 15 years to life for shooting at an occupied vehicle offense and 10 years for the gang enhancement were stayed.

Garcia contends there is insufficient evidence to support his convictions, to support the convictions on an aiding and abetting theory, to establish premeditation and deliberation, or to support imposition of a gang enhancement.  He also claims

---

[1] All statutory references are to the Penal Code unless otherwise stated.

instructional error regarding aiding and abetting, prosecutorial misconduct, and error in the denial of his motion to bifurcate trial of the gang enhancement. We affirm.

FACTS

During the early morning hours of August 9, 2008, George Robertson, an African–American, was shot and killed inside his car. Robertson's car was located near the driveway of his residence in Santa Maria.

A few hours earlier, Garcia and his brother Roy Duran were in the Coachman Bar which is also located in Santa Maria, less than two miles from the scene of the murder. The bar was frequented by African-American, Hispanic and white customers. Garcia appeared to be intoxicated. He flashed a gang sign and called out the name of his gang. Jason Ross was also in the bar. Garcia is Hispanic and Ross is African–American.

The customers began to leave the bar as closing time approached. Ross attempted to speak to an Hispanic woman and was threatened by an Hispanic man. Garcia argued with Ross, again calling out the name of his gang. When Garcia directed a racial slur at Ross, Garcia and Ross began fighting. The fight moved to the bar parking lot. Garcia was wearing a blue Dodger jersey and a white tee shirt under it that became visible during the fight. Duran was involved in the fight on Garcia's side but they were outnumbered. Other people standing outside the bar joined the fighting along racial lines, African–Americans against Hispanics. Garcia and Duran were losing when bar bouncers broke up the fight. The crowd dispersed when police arrived.

Jeannette Mack was victim George Robertson's girlfriend. They lived near each other and had a child together. Mack had been at the Coachman Bar that night but came home at closing time. Robertson, who had been sleeping at Mack's house, woke up, and left to return to his home to get luggage for a trip he and Mack were going to take. He said he would return.

Bianca Rodriguez, an African-American, knew Robertson and lived a short walk from Robertson's home. She also lived next door to Duran, and was in a romantic relationship with Duran at the time of the shooting. Rodriguez expected Duran to come

2

to her house that night and telephoned him several times to find out where he was. At approximately 2:00 a.m., she spoke to Duran on the telephone. Duran told her about the fight at the bar. Duran was upset because he thought Rodriguez's brother had been involved in the bar fight.

Shortly after the telephone call, Rodriguez heard two gunshots fired near her driveway. She looked out the window and saw Garcia and Duran drive away in a brown truck. A few minutes later, she heard loud music that sounded like it was coming from a car. She knew that Robertson frequently played music in his car at a high volume. She looked outside and saw Garcia and Duran. Garcia had a gun. She saw Garcia and Duran approach Robertson's home and heard nine or ten gunshots, and the sound of a car horn which lasted several minutes.

Moments later, Rodriguez looked outside a third time and saw Garcia holding a gun. She saw Garcia and Duran run towards Duran's home. Duran was wearing a white Raiders jersey. Garcia was wearing a white shirt and jeans. Shortly thereafter, Duran spoke to Rodriguez on the phone and indicated that he was upset because an Hispanic had beaten up Garcia in the bar fight.

Other witnesses heard the gunshots. When Genaro Cuevas heard the shots, he looked out his window and saw two men running away from a vehicle. One man was Hispanic, about 200 pounds, and was wearing a white tee shirt with dark pants. The other man wore dark clothing. Witnesses Rick and Teresa Bautista also heard gunshots and saw two people running. One was heavy and wore a white tee-shirt with black pants and the other was wearing dark clothing. Other witnesses testified similarly but disagreed on their descriptions of the men and the clothing they were wearing.

Police found Robertson slumped over in the driver's seat of his car with the engine still running. Robertson had died from a gunshot wound. Police recovered numerous bullet casings in the area. All the casings had been fired from the same gun.

Garcia and Duran did not appear at their employment the following Monday, August 11, 2008, and did not contact their employers to provide an explanation. Garcia was arrested on August 15, and Duran was arrested in October 2008.

3

At approximately 7:30 p.m. on the day of the early morning shooting, Robertson's sister made a call to Rodriguez at the request of the police. Rodriguez told Robertson's sister that she saw Garcia fire two shots in her driveway, and that Garcia and Duran then walked towards Robertson's home. Rodriguez then heard nine shots and a car horn, and saw Garcia and Duran drive away. Rodriguez told Robertson's sister that, when she confronted Duran with the shooting, Duran said, "I'm sorry nigger."

In a later interview with police, Rodriguez told the police that Garcia and Duran were involved in the shooting. She stated that Garcia was wearing a white tee shirt and gray pants and Duran was wearing a white Raider's jersey with black lettering. Rodriguez also identified Garcia in a police lineup and indicated that he was holding a gun at the time of the shooting.

At trial, however, Rodriguez recanted her prior statements. She testified that she did not see Garcia or Duran from her window, she did not see Garcia holding a gun or fire any shots, and that she did not tell Robertson's sister anything to the contrary.

## DISCUSSION

### Substantial Evidence Supports Convictions

Garcia contends there was insufficient evidence to support his convictions for first degree murder and shooting at an occupied motor vehicle.[2] He argues that there was no credible evidence that he was involved in the shooting, or acted as an aider and abettor, or acted with premeditation and deliberation. We disagree.

1. *Standard of Review.* In assessing a sufficiency of evidence claim, we consider the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence, that is, "'". . . evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt."'" (*People v. Burney* (2009) 47 Cal.4th 203, 253.) We presume all facts in support of the judgment which reasonably could be deduced from the evidence, accord the judgment all reasonable inferences from the evidence, and do not

---

[2] Garcia's contentions address the murder conviction and he makes no separate arguments regarding the conviction for shooting at an occupied vehicle.

4

reweigh the evidence or redetermine credibility. (*People v. Wilson* (2008) 44 Cal.4th 758, 806; *People v. Martinez* (2003) 113 Cal.App.4th 400, 412.) Reversal is not warranted simply because the evidence might also reasonably be reconciled with a different verdict. (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60; *People v. Bolin* (1998) 18 Cal.4th 297, 331.)

2. *Substantial Evidence Supports Convictions.* Garcia argues that his convictions were based entirely upon out-of-court statements by witness Bianca Rodriguez which lacked sufficient reliability or credibility to constitute substantial evidence, and which she later retracted during her trial testimony.

Unless it is physically impossible or inherently improbable, the testimony of a single witness is sufficient to support a conviction. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) More specifically, an out-of-court identification by a single eyewitness may be sufficient to prove the defendant's identity as the perpetrator, even if the witness does not confirm his or her identification at trial, and there is no corroborating evidence. (*People v. Boyer* (2006) 38 Cal.4th 412, 480; *People v. Cuevas* (1995) 12 Cal.4th 252, 257, 267-269, 271-272.) In assessing the sufficiency of an out-of-court identification, we consider all relevant circumstances, including: "(1) the identifying witness's prior familiarity with the defendant; (2) the witness's opportunity to observe the perpetrator during the commission of the crime; (3) whether the witness has a motive to falsely implicate the defendant; and (4) the level of detail given by the witness in the out-of-court identification and any accompanying description of the crime." (*Cuevas,* at p. 267; see CALCRIM No. 315 [listing factors to consider in evaluating identification evidence].)

Here, the out-of-court statements made by Rodriguez were sufficiently credible and reliable to constitute substantial evidence. Rodriguez had met Garcia on a prior occasion and knew Duran very well. She looked out her window multiple times and, although she did not see the shooting, she heard the gunshots and had an opportunity to observe actions by Garcia immediately before and after the shooting. Although Rodriguez had a motive to deny involvement by her boyfriend Duran or shift primary

5

responsibility to Garcia, she did not do so in her statements. She described what she saw in reasonable detail, and expressed no doubt in her out-of-court statements. She also saw Garcia and Duran from her driveway close to her window, and had been made aware of the bar fight in a telephone conversation with Duran.

Moreover, although no other witness was able to identify Garcia or Duran, several witnesses saw two men running away immediately after hearing shots fired. Contrary to Garcia's argument, such evidence provides corroboration of portions of Rodriguez's out-of-court statements. The jury could reasonably conclude that her pretrial statements were credible and discount her trial testimony as the product of fear or a desire to avoid involvement.

3. *Substantial Evidence Supports Aiding and Abetting Theory.* The case was tried on the theory that Garcia was the shooter,[3] but the jury was instructed on both direct perpetrator and aiding and abetting theories of liability. Garcia contends that there was no substantial evidence that he aided and abetted the shooting of Robertson by Duran. He also contends that the record indicates that one juror voted to convict Garcia on a factually invalid theory. We conclude that there was substantial evidence to support conviction on both a direct perpetrator and aider and abettor theory and, therefore, no error.

A person aids and abets a crime when he or she commits, encourages or facilitates its commission with knowledge of the unlawful purpose of the perpetrator and the intent or purpose of committing, encouraging, or facilitating the offense. (*People v. Beeman* (1984) 35 Cal.3d 547, 560–561.) No particular factor is dispositive in establishing knowledge and intent; the court must look at the totality of the circumstances. (*People v. Medina* (2009) 46 Cal.4th 913, 922.) "Among the factors which may be considered . . . are: presence at the scene of the crime, companionship, and conduct before and after the offense." (*In re Lynette G.* (1976) 54 Cal.App.3d 1087, 1094; see also *In re Juan G.* (2003) 112 Cal.App.4th 1, 5.)

---

**3** Duran, who was convicted of second degree murder, was tried and convicted on the theory that he aided and abetted Garcia. (*People v. Duran*, B228532 [nonpub. opn.].)

Here, substantial evidence shows that Duran and Garcia acted in concert beginning with the fight in the Coachman Bar. Duran and Garcia were angry over the fight which had strong racial overtones. Also, Duran was angry with Robertson because he thought Robertson was too friendly with Duran's girlfriend. In addition, evidence shows that Duran and Garcia travelled together from the bar to the area in which Robertson lived which was approximately two miles away. They approached Robertson together and one of them was carrying a gun. The evidence also shows that, after the shooting, Garcia and Duran ran away together to Duran's home. The evidence shows that Garcia and Duran were at the bar together and near Robertson's house both immediately before and immediately after the shooting.

Because both theories of liability are supported by the evidence, this uncertainty is immaterial. "'[A]s long as each juror is convinced beyond a reasonable doubt that defendant is guilty of murder as that offense is defined by statute, it need not decide unanimously by which theory he is guilty. . . .'" (*People v. Jenkins* (2000) 22 Cal.4th 900, 1024-1025.) A jury "'. . . need not decide unanimously whether defendant was guilty as the aider and abettor or as the direct perpetrator. . . . Not only is there no unanimity requirement as to the theory of guilt, the individual jurors themselves need not choose among the theories, so long as each is convinced of guilt. Sometimes, as probably occurred here, the jury simply cannot decide beyond a reasonable doubt exactly who did what. There may be a reasonable doubt that the defendant was the direct perpetrator, and a similar doubt that he was the aider and abettor, but no such doubt that he was one or the other.' . . . [Although] different facts would support aiding and abetting liability and liability as a direct perpetrator, . . . the jury need not unanimously agree 'on the precise factual details of how a killing under one or the other theory occurred in order to convict defendant of first degree murder.'" (*Ibid.*; see also *People v. Santamaria* (1994) 8 Cal.4th 903, 918-919; *Schad v. Arizona* (1991) 501 U.S. 624, 631-632.)

4. *Substantial Evidence of Premeditation and Deliberation.* Garcia also claims there was no substantial evidence of the premeditation and deliberation required for a first degree murder conviction. We disagree.

7

An intentional killing is premeditated and deliberate if it resulted from preexisting thought and reflection rather than unconsidered or rash impulse. (*People v. Hughes* (2002) 27 Cal.4th 287, 370-371.) The requisite reflection does not require a specific or extended period of time. Thoughts may follow each other with great rapidity and a calculated decision may be arrived at quickly. (*People v. Mayfield* (1997) 14 Cal.4th 668, 767; see also *People v. Stitely* (2005) 35 Cal.4th 514, 543.)

Appellate courts typically rely on three kinds of evidence in resolving the issue of premeditation and deliberation: motive, planning activity, and manner of killing. (*People v. San Nicolas* (2004) 34 Cal.4th 614, 658, citing *People v. Anderson* (1968) 70 Cal.2d 15.) These factors, however, provide a framework and are not prerequisites for premeditation or deliberation (*People v. Hawkins* (1995) 10 Cal.4th 920, 957) and need not be present in any particular combination or degree. (*People v. Burney, supra,* 47 Cal.4th at p. 235.)

Here, the record discloses evidence of motive, planning, and manner of killing from which a reasonable jury could conclude that Garcia acted with premeditation and deliberation. Evidence of planning includes the close proximity of the shooting to the bar fight, possession of a gun prior to the shooting, and Duran's telephonic statements to Rodriguez that he was upset about the beating of Garcia in the bar fight. In addition, there is evidence that Garcia and Duran fired two gunshots outside Rodriguez's apartment before they walked towards Robertson's home and shot him. Evidence that Garcia was a gang member and the importance of retaliation and reputation in gang culture provides evidence of motive.

The manner of the shooting also shows premeditation and deliberation. Garcia and Duran approached Robertson with a gun and fired several shots from close range with the clear intent to kill. Such evidence "shows a calculated design to ensure death rather than an unconsidered explosion of violence." (*People v. Horning* (2004) 34 Cal.4th 871, 902-903; *People v. Koontz* (2002) 27 Cal.4th 1041, 1082.) Considering this evidence as a whole, the jury reasonably could conclude that Garcia "thought before he acted." (*People v. Villegas* (2001) 92 Cal.App.4th 1217, 1224.)

8

*No Error in Aiding and Abetting Instruction*

Garcia contends that the trial court erred in instructing the jury on aiding and abetting by failing to inform the jury that an aider and abettor's liability depends upon his own mens rea. We disagree.

Garcia has forfeited this contention on appeal because he did not object and request a modification of the standard form CALCRIM No. 401 jury instruction. (*People v. Lopez* (2011) 198 Cal.App.4th 1106, 1118-1119.) A party may not claim an instruction that is generally correct is incomplete or misleading unless he has first requested clarifying instructions in the trial court. (*People v. Canizalez* (2011) 197 Cal.App.4th 832, 849; *Lopez*, at pp. 1118-1119.)

Even if the issue had not been forfeited, there was no instructional error. It is undisputed that the guilt of an aider and abettor is determined by his own mental state and an aider and abettor may be convicted of a greater or lesser crime than the perpetrator. (*People v. McCoy* (2001) 25 Cal.4th 1111, 1114; *People v. Lopez, supra,* 198 Cal.App.4th at p. 1118.)

"'Aider and abettor liability is premised on the combined acts of all the principals, but on the aider and abettor's own mens rea.' [Citation.] We have defined the required mental states and acts for aiding and abetting as: '(a) the direct perpetrator's actus reus—a crime committed by the direct perpetrator, (b) the aider and abettor's mens rea—knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends, and (c) the aider and abettor's actus reus—conduct by the aider and abettor that in fact assists the achievement of the crime.'" (*People v. Thompson* (2010) 49 Cal.4th 79, 116–117.) Here, the trial court instructed the jury with the standard version of CALCRIM No. 401 which correctly informed the jury of these principles of aider and abettor liability.[4] There is nothing in the jury instructions as given which could

---

[4] CALCRIM No. 401 provides, in pertinent part: "To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that: [¶] 1. The perpetrator committed the crime; [¶] 2. The defendant knew that the perpetrator intended to commit the crime; [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; [¶] AND [¶]

9

have confused the jury that an aider and abettor is equally guilty as the direct perpetrator regardless of the aider and abettor's own mental state. We presume that jurors understand, correlate, and follow the court's instructions. (*People v. Castaneda* (2011) 51 Cal.4th 1292, 1320-1321; *People v. Lopez, supra*, 198 Cal.App.4th at p. 1119.)

### *No Prosecutorial Misconduct*

Garcia contends the prosecutor committed misconduct by misstating the evidence during argument, and by asking questions during his trial examination of Rodriguez which insinuated the existence of facts for which there was no evidence. He argues that the prosecutor falsely claimed that witnesses who saw men running from the shooting corroborated Rodriguez's unsworn statements regarding the clothing worn by Garcia. He also argues that the prosecutor asked Rodriguez questions at trial which insinuated that she recanted her unsworn statements incriminating Garcia because of threats against her when, in fact, there was no evidence of any threats. We conclude that there was no misconduct by the prosecutor.

As respondent argues, Garcia has forfeited both of his prosecutorial misconduct claims by failing to object to the prosecutor's argument or questions at trial. (*People v. Thompson, supra,* 49 Cal.4th at p. 121.) We reject Garcia's assertion that objection in the trial court would have been futile and that an admonition would not have cured any purported misconduct. Even if there had been misconduct, nothing in the record supports the futility of objections or the inadequacy of admonitions. We will address Garcia's contention on the merits, however, because he argues in the alternative that his trial counsel's failure to object amounted to ineffective assistance of counsel.

It is misconduct for a prosecutor to misstate or mischaracterize the evidence during argument, or assert facts that are not based on the evidence at trial. (*People v. Davis* (2005) 36 Cal.4th 510, 550.) A prosecutor's reference to facts not in evidence is

---

4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime. [¶] Someone *aids and abets* a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime."

misconduct because it "'tend[s] to make the prosecutor his own witness—offering unsworn testimony not subject to cross-examination. . . .'" (*People v. Hill* (1998) 17 Cal.4th 800, 827-828, overruled on another ground in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.) A prosecutor, however, "is given wide latitude to vigorously argue his or her case and to make fair comment upon the evidence, including reasonable inferences or deductions that may be drawn from the evidence." (*People v. Ledesma* (2006) 39 Cal.4th 641, 726.) A prosecutor may argue points and draw reasonable evidentiary inferences which are at odds with defendants' view of the evidence. (*People v. Dennis* (1998) 17 Cal.4th 468, 522.)

Garcia argues that there was misconduct when the prosecutor claimed that testimony from witnesses supported the unsworn statement by Rodriguez that Garcia was wearing a white tee shirt. Because testimony from other witnesses indicated that Garcia was wearing a white or light-colored tee shirt, the prosecutor's argument fairly interpreted and characterized the state of the evidence.

Bartender Joshua Caldera testified that he thought Garcia was wearing a white tee shirt during the bar fight. Genaro Cuevas testified that he saw an Hispanic man wearing a white tee shirt running away. Teresa Bautista and her husband testified that one of the two persons they saw running from the scene was wearing light clothing. Although witness statements were not identical and the men running away were difficult to see, there is ample testimony to support the prosecutor's argument that Garcia was wearing a white tee shirt.

It is also misconduct for a prosecutor to ask a witness questions which suggest facts adverse to the defendant without a good faith belief that the facts are true and could be proven. (*People v. Bolden* (2002) 29 Cal.4th 515, 562; *People v. Mooc* (2001) 26 Cal.4th 1216, 1233.)

Here, in response to trial testimony which was inconsistent with her unsworn statements incriminating Garcia, the prosecutor asked Rodriguez whether she had been threatened by anyone. On direct examination, the prosecutor asked Rodriguez if she were afraid to testify. She said "no," but admitted that she may have told other

11

people that she was afraid. The prosecutor also asked her what she meant by her pretrial statement that "[you had] to live here." She answered that she did not want to get involved, and that testifying might "put me and my girls in harm's way." Also, prior to trial, Rodriguez said that she did not want to report threats to the police. When asked by the prosecutor at trial about this statement, she said she had not received any threats but "was feeling scared."

The prosecutor's question did not constitute misconduct. There is no basis in the record to conclude that the prosecutor did not have a good faith belief that Rodriguez would testify that she had been threatened and, in essence, Rodriguez gave testimony supporting that inference that she was afraid. Rodriguez admitted that she feared testifying and was worried about retaliation against her and her family.

*Substantial Evidence Supports Gang Enhancement*

Garcia contends that there was insufficient evidence to support imposition of a gang enhancement. He concedes membership in a criminal street gang, but argues that there was no substantial evidence that the murder was committed for the benefit of his gang "with the specific intent to promote, further, or assist" criminal conduct by gang members. (§ 186.22, subd. (b)(4).) We disagree and conclude that substantial evidence supports the jury's finding.

A gang enhancement requires proof of the existence of a criminal street gang and that the offense was "committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." (§ 186.22, subd. (b)(4).) Expert testimony is admissible to prove these elements, including the motivation for a crime, and whether a crime was committed to benefit or promote a gang. (*People v. Albillar, supra*, 51 Cal.4th at p. 63; *People v. Garcia* (2007) 153 Cal.App.4th 1499, 1512.) But, an expert's opinion must be based on the evidence, not on speculation or conjecture, and more than mere gang membership is required. (*People v. Gardeley* (1996) 14 Cal.4th 605, 617-618.) We apply the substantial evidence standard in assessing the sufficiency of

12

the evidence supporting a gang enhancement. (*People v. Albillar*, *supra*, 51 Cal.4th at pp. 59-60.)

Here, Santa Maria Police Officer Louis Tanore testified as the prosecution's gang expert. He testified that he was familiar with the Tanglewood gang, Garcia was a hard core member of that gang, and the murder was committed for the benefit of the gang. He based his opinion upon evidence that (1) the murder closely followed a fight at the Coachman Bar between Garcia and a much smaller African-American man, (2) at the time of the fight, Garcia identified himself as a member of the Tanglewood gang to all others in the bar by calling out the name "Wood" and flashing a gang sign, and (3) Garcia had suffered a humiliating defeat at the hands of the smaller man in the fight.

Tanore testified that respect is critical to gangs and that gang members tend to react violently to individuals who disrespect the gang. Tanore testified that a hard core gang member such as Garcia is expected to retaliate against violence in order to maintain his status in the gang. Failure to retaliate would be viewed as a sign of weakness which would damage the reputation of Garcia in the gang. Tanore testified that the combination of Garcia being humiliated in the fight with a much smaller man and racial animosity required immediate and extreme retaliation to protect his status in the gang. (See *People v. Albillar, supra*, 51 Cal.4th at p. 63 [expert opinion that a crime benefited a gang by enhancing its reputation for viciousness can be sufficient to show the crime was committed for the benefit of the gang].)

A gang enhancement also requires proof that the offense was committed with the "specific intent to promote . . . criminal conduct by gang members." (§ 186.22, subd. (b)(1).) Circumstantial evidence of intent is sufficient. Courts "'. . . routinely draw inferences about intent from the predictable results of action. . . .'" (*People v. Miranda* (2011) 192 Cal.App.4th 398, 411-412.) If substantial evidence otherwise establishes that the offense was gang related, the jury reasonably may infer the required specific intent. (See *People v. Albillar, supra*, 51 Cal.4th at pp. 67-68.)

13

*No Abuse of Discretion in Denying Bifurcation of Gang Enhancement*

Garcia contends the trial court abused its discretion by refusing to bifurcate the gang enhancement from the trial of the offenses. We disagree.

A trial court has discretion to bifurcate gang enhancement allegations if it determines that the probative value of the gang evidence is outweighed by a risk of undue prejudice. (Evid. Code, § 352; *People v. Hernandez* (2004) 33 Cal.4th 1040, 1049.) Gang evidence always carries a potential for prejudice and, when gang enhancements are not alleged, the probative value of such evidence is often minimal. Conversely, when an offense is alleged to be gang related, gang evidence is relevant and highly probative to prove elements of the charged offense. (*Hernandez,* at p. 1049.) Evidence of the defendant's gang affiliation, the beliefs and practices of the gang, and the gang's criminal enterprises "can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime." (*Ibid*.) To the extent that evidence supporting a gang enhancement is admissible at a trial of the offense, bifurcation is not necessary. (*Id*. at pp. 1049-1050.)

We conclude that there was no abuse of discretion in this case. The prejudicial effect of gang evidence did not outweigh its probative value to prove motive and identity and explain the existence of fear and intimidation that could have caused Rodriguez to recant her unsworn statements during her trial testimony.

The gang evidence was intertwined with evidence of guilt and particularly relevant to Garcia's identity, motive, and intent. (*People v. Hernandez, supra*, 33 Cal.4th at p. 1048.) "'"[B]ecause a motive is ordinarily the incentive for criminal behavior, its probative value generally exceeds its prejudicial effect, and wide latitude is permitted in admitting evidence of its existence." . . .'" (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1168; *People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1550.)

Garcia argues that admission of evidence of a large number of predicate offenses was prejudicial. We agree that admission of many predicate offenses provides a potential for prejudice. (*People v. Hernandez, supra*, 33 Cal.4th at p. 1049.) Nevertheless, the predicate offenses in this case were not more serious than the charged

14

offenses, and the number offered into evidence was not so large as to cause significant prejudice.  The burden is on the defendant to establish a substantial danger of prejudice requiring bifurcation.  (*Id*. at p. 1051.)  Garcia has failed to meet that burden.

The judgment is affirmed.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

15

Edward H. Bullard, Judge

Superior Court County of Santa Barbara

_____

Robert Franklin Howell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Stephanie A. Miyoshi, Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.