[No. B004265. Second Dist., Div. Seven. Jan. 17, 1985.]

In re ROBERT M., a Minor, on Habeas Corpus.

COUNSEL

Timothy M. Moss for Petitioner.

John K. Van de Kamp, Attorney General, Donald F. Roeschke and Beverly K. Falk, Deputy Attorneys General, for Respondent.

OPINION

**JOHNSON, J.—**

FACTS AND PROCEEDINGS BELOW

Robert was declared a ward of the court pursuant to Welfare and Institutions Code section 602[1] after he admitted taking part in a burglary. He was placed on home probation on various conditions including: "Attend a school program approved by the Probation Officer without absence unless excused by parent, guardian, school authorities or Probation Officer. Maintain satisfactory grades and citizenship." This is a standard probation condition in the Los Angeles County juvenile courts.

On two occasions Robert has been remanded to juvenile hall to serve "*Ricardo M.*" time[2] for failure to comply with the satisfactory grades and citizenship condition of his probation. In the first instance, the probation

---

[1] Unless otherwise noted all future references are to the Welfare and Institutions Code.
[2] *In re Ricardo M.* (1975) 52 Cal.App.3d 744 [125 Cal.Rptr. 291].

officer's report showed Robert had received four D's, two F's, had numerous absences and was suspended for a time for refusing to dress for P.E. In the second instance, the report showed one C, two D's, three F's and ten U's in citizenship.

Following his second incarceration, Robert brought this petition for habeas corpus. We issued an order to show cause and stayed future implementation of *Ricardo M.* time pending our decision. We treat the petition for writ of habeas corpus as a petition for writ of mandate.

## ISSUES

The issues raised in this petition can be divided into two groups: procedural and substantive. The procedural issues are whether the March 1984 commitment order violated the prohibition against double jeopardy or the procedural requirements of section 777 and due process. The substantive issues are whether conditioning probation on Robert maintaining "satisfactory grades and citizenship" deprives him of liberty without due process of law because the condition is vague and uncertain or because Robert lacks the capacity to comply.

## DISCUSSION

A. *Under the Facts of This Case It Would Be Fundamentally Unfair to Revoke Robert's Probation for Failure to Maintain Satisfactory Grades and Citizenship.*

In this case of first impression we are not prepared to say a court may never require a certain performance level in school as a condition of probation. When a minor is adjudged a ward of the court under section 602 the court must place the care, custody and control of the minor under the supervision of the probation officer. (§ 727.) When such ward is placed under the supervision of the probation officer "[t]he court may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." (§ 730; and see § 727: "[t]he court may make any and all reasonable orders for the . . . supervision [and] conduct . . . of such minor, . . .") Such conditions are valid and enforceable unless they bear no reasonable relationship to the underlying offense, or prohibit conduct neither criminal in nature nor related to future criminality. (*In re Gerald B.* (1980) 105 Cal.App.3d 119, 124-125 [164 Cal.Rptr. 193] and cases cited therein.)

School attendance has regularly been upheld as a condition of probation reasonably related to rehabilitation and prevention of future criminality. (*In*

*re Gerald B., supra,* 105 Cal.App.3d at p. 125; *In re Mark M.* (1980) 109 Cal.App.3d 873, 876 [167 Cal.Rptr. 461]; and see, Rosenberg & Rosenberg, *Truancy, School Phobia and Minimal Brain Dysfunction* (1977) 61 Minn.L.Rev. 543, 547-548.) This is so, not because school attendance keeps juveniles off the streets—commitment to juvenile hall would accomplish this purpose more effectively—but because of the well known correlation between education and the crime rate. (See *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 607 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187].) Presumably, mere attendance at school without learning accomplishes little. Accordingly, although we do not reach the question, we recognize an argument can be made that the outside stimulus to learning provided by a probation requirement of satisfactory grades and citizenship is rationally related to rehabilitation and prevention of future criminality.

Nor do we find it necessary to reach the question whether the requirement of "satisfactory" grades and citizenship is inherently void for vagueness.[3] ■ It is an essential component of due process that individuals be given fair notice of those acts which may lead to a loss of liberty. (*United States* v. *Harriss* (1954) 347 U.S. 612, 617 [98 L.Ed. 989, 996, 74 S.Ct. 808].) This is true whether the loss of liberty arises from a criminal conviction or the revocation of probation. (See, *People* v. *Lewis* (1978) 77 Cal.App.3d 455, 464 [143 Cal.Rptr. 587, 3 A.L.R.4th 1185].)

" 'Fair notice' requires only that a violation be described with a ' "reasonable degree of certainty" ' . . . so that 'ordinary people can understand what conduct is prohibited.' . . . ." (*Burg* v. *Municipal Court,* (1983) 35 Cal.3d 257, 270-271 [198 Cal.Rptr. 145, 673 P.2d 732] [citations omitted].) Robert contends the word "satisfactory" is too vague to provide a student fair warning he or she is skating on thin ice. Do "satisfactory grades" mean a C average; a D minus average; promotion to the next grade? What about a student who otherwise makes straight A's but flunks volleyball? Is that student subject to incarceration for having two left feet?

We need not try to answer these semi-intriguing questions. ■ Instead we strike the "satisfactory grades and citizenship" requirement from the conditions on Robert's probation because the uncontradicted evidence shows compliance with that condition is beyond Robert's capacity. Here we have a 13-year-old boy attending seventh grade with second grade vocabulary skills, third grade reading skills and third grade math skills. He has an I.Q. of 70. A court-ordered evaluation concluded Robert "is functioning about

---

[3]In addition to the notice requirements of due process, section 726 requires a court order limiting control by a parent over a ward "clearly and specifically set forth all such limitations."

five years below his current grade level in all academic areas." The evaluator recommended an eye examination and a small, structured classroom setting in which Robert can receive individual remedial help in language development, reading, arithmetic and written expression. So far, all Robert has received is jail time.[4]

In *Bearden* v. *Georgia* (1983) 461 U.S. 660 [76 L.Ed.2d 221, 103 S.Ct. 2064], the court held that once a sentencing court has granted probation on condition the defendant pay a fine and restitution it cannot subsequently revoke probation and imprison the defendant for failure to pay without first determining either that the defendant has not made bona fide efforts to pay or that no adequate alternative form of punishment exists. "[I]f the probationer has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own, it is fundamentally unfair to revoke probation automatically . . . ." (*Id.*, 461 U.S. at p. 668 [76 L.Ed.2d at p. 230]; cf. *People* v. *McClean* (1955) 130 Cal.App.2d 439, 444-445 [279 P.2d 87].) Several courts have indicated it would be unjust to revoke the probation of a person addicted to alcohol for violating a probation condition prohibiting consumption of alcoholic beverages. (See, *United States* v. *Miller* (9th Cir. 1976) 549 F.2d 105; *Sweeney* v. *United States* (7th Cir. 1965) 353 F.2d 10; *Flinchum* v. *Commonwealth of Virginia* (W.D. Va. 1972) 346 F.Supp. 17, 19-20.)

We believe the case before us presents an analogous situation. It is fundamentally unfair to deprive Robert of his liberty for failing to achieve a level of school performance undoubtedly beyond his capacity.

The respondent emphasizes the satisfactory citizenship requirement of the probation order. He argues Robert's absences from school and misbehavior in class adversely affect his grades. (*Ibid.*) Implicit in this argument is the notion even if Robert cannot make satisfactory grades, at least he can show up for classes and behave himself. This argument would carry some weight if addressed to a student with the capacity to work at least close to grade level. But that is not this case. Dr. Fryer, an educational expert called in by the juvenile court, was asked how he would expect a student to perform in a class that is being taught on a level five grades above what he is capable of performing. Dr. Fryer responded: "I would assume that, one, that he would be failing; two, that [he] would not be paying attention; there would be a great deal of tardies and truancies, based around just shame and unable [*sic*] to cope with being in the room and not understanding what was going

---

[4]Undoubtedly, while in juvenile hall, Robert is receiving help in language development and written expression from his fellow inmates. We question whether this is the sort of help the evaluator had in mind.

on." (*Id.,* at lines 11-17.) Thus, with Robert, grade and deportment are inextricably linked. Ordering Robert to maintain satisfactory grades and citizenship is equivalent to demanding a lame person to run for his freedom.[5]

We emphasize we are deciding this case on its particular facts. We are not suggesting that, in other contexts a court would be prevented from revoking probation because of the probationer's lack of fault in violating a probation condition. A court would not be required, for example, to continue the probation of a convicted drunk driver once it becomes apparent efforts at controlling chronic drunken driving have failed. (See, *Bearden* v. *Georgia, supra,* 461 U.S. at p. 668, fn. 9 [76 L.Ed.2d at p. 230]; *People* v. *Mitchell* (1981) 125 Cal.App.3d 715, 719-720 [178 Cal.Rptr. 188]; *State* v. *Oyler* (1968) 92 Idaho 43 [436 P.2d 709, 713].) Nor are we suggesting a court could not revoke probation for the purpose of placing a minor in a setting where he or she could receive assistance commensurate with the goal of rehabilitation. In the case before us Robert's violation of the probation condition posed no threat to the safety or welfare of society (compare, *Gilliam* v. *Municipal Court* (1979) 97 Cal.App.3d 704 [159 Cal.Rptr. 74] with *People* v. *Burton* (1981) 117 Cal.App.3d 382 [172 Cal.Rptr. 632, 19 A.L.R.4th 1243]) nor did the court below propose any alternative arrangement which would assist Robert scholastically.

B. *The March 1984 Commitment Order Did Not Violate the Prohibition on Double Jeopardy.*

■ Robert contends the March 1984 commitment order was based on the same failure to maintain satisfactory grades and citizenship that resulted in his November 1983 commitment. He then answers his own argument by correctly pointing out there was evidence of additional grades of D, F and unsatisfactory citizenship occurring between November 1983 and March 1984. It is not true Robert was found to have twice violated a condition of probation on the same set of facts.

C. *The Court Proceeded in Accordance With Welfare and Institutions Code Section 777 Subdivision (e); That Section Does Not Deny Due Process.*

■ Robert argues stayed juvenile hall confinement time may not be carried into effect except by a supplemental petition under section 777 subdi-

---

[5]This is not meant as a criticism of the juvenile court in this case. As we have previously noted, the "satisfactory grades and citizenship" requirement is a standard condition of probation and at the time it made the order the court had no reason to know of Robert's educational deficiency. However, now that this deficiency has come to light, it would be manifestly unjust not to remove the condition.

visions (a) and (b). (See, e.g., *In re Ruben A.* (1981) 121 Cal.App.3d 671, 675 [175 Cal.Rptr. 649].)

Pursuant to section 777 subdivision (e), effective after *In re Ruben A.*, the filing of a supplemental petition is not necessary to modify a previous commitment order and to commit a minor for 30 days or less to a county institution. For such a disposition, the court must have made and stayed a detention order at the original disposition and the minor must have been found to have violated a probationary condition. Procedurally, this is what occurred in Robert's case.

We find no merit in Robert's due process challenge to section 777 subdivision (e). That section and rule 1394 of the California Rules of Court require prior notice and hearing on the question whether the minor has violated a condition of probation. (Cf. *In re Gerald B., supra,* 105 Cal.App.3d at p. 122.) This procedure adequately protects the minor's rights to notice and to factual findings to support the imposition of confinement.

■ Nor do we find any merit in Robert's claim the court failed to find facts justifying commitment as required by section 726. In order to impose stayed juvenile hall confinement time under section 777 subdivision (e), the court must find that the minor has violated a condition of probation. This is essentially the same finding as subdivision (b) of section 726 which permits removal from parental custody when a court finds: "That the minor has been tried on probation in such custody and has failed to reform."

### DISPOSITION

The petition is granted as to probation condition number 9 contained in the trial court's minute order dated May 24, 1983. Let a peremptory writ of mandate issue to the Superior Court of Los Angeles County directing that court to strike "Maintain satisfactory grades and citizenship" from condition number 9 of the conditions of probation contained in the minute order entered May 24, 1983.

The order staying enforcement of probation condition number 38 is dissolved and the order to show cause is discharged.

Lillie, P. J., and Thompson, J., concurred.

Petitions for a rehearing were denied February 6, 1985, and petitioner's application for a hearing by the Supreme Court was denied April 4, 1985. Bird, C. J., and Reynoso, J., were of the opinion that the application should be granted.