[No. B161559. Second Dist., Div. Seven. Aug. 20, 2003.]

In re JUAN G., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JUAN G., Defendant and Appellant.

**COUNSEL**

Allen G. Weinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Jaime L. Fuster and Erin M. Pitman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**JOHNSON, J.**—Appellant Juan G. appeals from the order of wardship after a finding he committed second degree robbery.[1] At disposition, the court ordered him placed in the Camp Community Placement Program and calculated the maximum theoretical period of confinement as five years. Appellant contends: (1) the evidence is insufficient to support the finding he committed robbery; and (2) the trial court abused its discretion by ordering Juan G. to maintain a "B" grade average as a condition of probation.

## FACTUAL AND PROCEDURAL BACKGROUND

*Prosecution Evidence*

Around 10:00 p.m. Oscar Estevez was walking on the street alone. He was approached by appellant and Quincy D. who were together on foot. When the minors reached Estevez, Quincy D. said something in English, which Estevez did not understand. Quincy D. withdrew a knife from his waistband, pointed it at Estevez, from about one foot away, and demanded money. Estevez became frightened and surrendered $70 to Quincy D. While Quincy D. displayed the knife and took the money, appellant was standing next to him. Estevez felt "threatened" by appellant, who stood close enough to touch him.

---

[1] Welfare and Institutions Code section 602; Penal Code section 211.

After Quincy D. obtained the money, he fled with appellant.[2] They were subsequently found by police, walking together through an empty lot and then attempting to climb a perimeter wall. Estevez identified appellant and Quincy D. as the minors who robbed him. An officer searched Quincy D. and recovered an eight-inch kitchen knife in his pants pocket. The same officer testified Quincy D. appeared cooperative, in full control of his faculties. Quincy D. did not appear to be under the influence of alcohol.

*Defense Evidence*

Appellant testified in his own behalf. Appellant and Quincy D. attended a party at a neighbor's house on the day of the robbery. Also present were appellant's brother, Rolando G., and friends Fareed and Cesar. From noon to 8:45 p.m. appellant consumed at least nine beers and Quincy D. drank at least 13 beers. Around 8:45 p.m., everyone except Rolando G. left the house and walked to a fast food restaurant. Fareed and Cesar entered the restaurant. Quincy D. told appellant to go with him to a nearby gas station to buy cigars. Quincy D. began walking in the opposite direction of the gas station and appellant followed five to six feet behind him. Quincy D. ran up to Estevez, pulled a knife from his pants and said: "Give me your money." Estevez complied and Quincy D. ran. Appellant did not know Quincy D. had a knife or was planning to rob Estevez. Appellant remained with Quincy D. because appellant was drunk and not thinking clearly. Appellant and Quincy D. ran through an empty lot and attempted to climb a perimeter wall to avoid police.

Fareed testified appellant and Quincy D. had been drinking at the party. Quincy D. seemed "kind of wobbly" when Fareed first saw him. Quincy D. appeared too intoxicated to run or climb a fence.

Rolando G. testified appellant, Quincy D. and Cesar had all been drinking at the party. By 8:45 p.m. the three of them appeared "real drunk" from "the way they talked" and walked.

The juvenile court determined the evidence established beyond a reasonable doubt appellant aided and abetted the robbery, and sustained the petition. The court declared appellant a ward of the court and ordered him placed in the Community Camp Placement Program. Appellant was also ordered, among other probation conditions, "to maintain satisfactory grades which means a 'B' average, attendance and citizenship."

---

[2] Robbery was also alleged against Quincy D. in a separate petition. The juvenile court adjudicated the petitions against appellant and Quincy D. in the same proceeding. Quincy D. is not a party to this appeal.

## DISCUSSION

1. *Substantial Evidence Supports the Finding Appellant Committed Robbery*

Appellant contends he was not an aider and abettor, but "simply an 'innocent, passive, and unwitting bystander' " during the robbery.[3] Appellant argues "at most" the record shows he was with Quincy D. and did nothing other than watch, which is consistent with his own testimony he was unaware Quincy D. had a knife or planned to rob Estevez. Appellant points to *People v. Durham* and *In re Jose T.* for the proposition neither presence at the scene of the crime, nor knowledge of but failure to prevent it, is sufficient to establish aiding and abetting its commission.[4]

█ Whether a person has aided and abetted in the commission of a crime is a question of fact, and on appeal all conflicts in the evidence and attendant reasonable inferences are resolved in favor of the judgment.[5] Among the factors which may be considered in determining aiding and abetting are: presence at the crime scene, companionship, and conduct before and after the offense.[6] After examining the record in light of these factors we conclude the juvenile court reasonably inferred from appellant's presence he knew of and shared Quincy D.'s criminal intent, and he aided, promoted, and encouraged the commission of the robbery.[7]

Appellant and Quincy D. approached Estevez together. When Quincy D. demanded money at knifepoint, appellant was standing beside him. Estevez was afraid Quincy D. would stab him, and he felt further intimidated by appellant, who was within touching distance. After the robbery, appellant fled with Quincy D., and the two minors were soon found and arrested together. Thus, appellant was present at the robbery, standing with Quincy D. and the victim. He was in the company of Quincy D. immediately prior to the robbery and during the attempted escape.[8]

As for appellant's testimony, the juvenile court was not obligated to believe it. The court's decision to sustain the petition indisputably reflects its

---

[3] *People v. Campbell* (1994) 25 Cal.App.4th 402, 410 [30 Cal.Rptr.2d 525].

[4] *People v. Durham* (1969) 70 Cal.2d 171 [74 Cal.Rptr. 262, 449 P.2d 198]; *In re Jose T.* (1991) 230 Cal.App.3d 1455 [282 Cal.Rptr. 75].

[5] *People v. Campbell, supra,* 25 Cal.App.4th 402, 409; *In re Lynette G.* (1976) 54 Cal.App.3d 1087, 1094 [126 Cal.Rptr. 898].

[6] *People v. Campbell, supra,* 25 Cal.App.4th at page 409; *In re Lynette G., supra,* 54 Cal.App.3d at page 1094.

[7] See *People v. Hill* (1998) 17 Cal.4th 800, 851 [72 Cal.Rptr.2d 656, 952 P.2d 673].

[8] *In re Lynette G., supra,* 54 Cal.App.3d at page 1094.

conclusion appellant was not a credible witness. █ This determination of credibility shall not be disturbed on appeal.[9] The function of an appellate court is not to reweigh the evidence and substitute its judgment for that of the juvenile court. [10]

Respondent is correct the instant case is analogous to *In re Lynette G.* in which witnesses saw a teenage girl rob a woman of her purse and package.[11] Five feet away stood the minor and two other girls, who fled with the perpetrator when the victim began yelling for help. Shortly thereafter, all four girls were found and arrested together. The Court of Appeal held there was sufficient evidence for the juvenile court to conclude the minor participated as an aider and abettor. The minor was at the crime scene, fled with the perpetrator and her companions, and was soon detained in their company.[12]

We conclude substantial evidence supports the finding appellant committed robbery.[13]

2. *Requiring Appellant to Maintain a "B" Grade Average was an Abuse of Discretion.*

Appellant contends the court erred by requiring him to maintain a "B" grade average. Notwithstanding respondent's claim of waiver, we agree with appellant.

█ The juvenile court is empowered to impose conditions of probation in juvenile cases and has broad discretion when formulating such conditions.[14] A juvenile probationer may be therefore subject to "any and all reasonable conditions" the court "may determine fitting and proper to the end that justice

---

[9] *In re Cheri T.* (1990) 70 Cal.App.4th 1400, 1404 [83 Cal.Rptr.2d 397].

[10] *In re E.L.B.* (1985) 172 Cal.App.3d 780, 788 [218 Cal.Rptr. 429].

[11] *In re Lynette G., supra,* 54 Cal.App.3d at page 1095.

[12] *In re Lynette G., supra,* 54 Cal.App.3d at pages 1092–1093, 1095.

[13] The juvenile court redacted: "My friend had nothing to do with the robbing," from Quincy D.'s postarrest statement to police: "I just wanted the money. I told him to stand still, and he gave me the money. I wanted to tell what happened," before admitting the statement into evidence as hearsay within the penal interest exception. (Evid. Code section 1230.) Appellant maintains, as did his defense counsel, the entire statement should have been admitted under this exception. We disagree. Only those portions of Quincy D.'s statements which are specifically disserving to his penal interests are admissible. (*People v. Duarte* (2002) 24 Cal.4th 603, 612 [101 Cal.Rptr.2d 701, 12 P.3d 1110].) The statement concerning appellant does not inculpate Quincy D. but is merely a collateral assertion to which the exception does not apply. (*Id.* at p. 612, and see *People v. Lawley* (2002) 27 Cal.4th 102, 153–154 [115 Cal.Rptr.2d 614, 38 P.3d 461].)

[14] *In re Angel J.* (1992) 9 Cal.App.4th 1096, 1100 [11 Cal.Rptr.2d 776].

may be done and the reformation and rehabilitation of the ward enhanced."[15] In deciding what probation conditions are appropriate, the court shall consider not only the circumstances of the offense but also the minor's entire social history.[16] Such conditions are valid and enforceable unless they bear no reasonable relationship to the underlying offense or prohibit conduct that is neither criminal in nature nor related to future criminality.[17] On appeal, the court's exercise of discretion will not be disturbed absent a manifest abuse of discretion.[18]

Applying the above principles, we strike the " 'B' average" requirement from the probation condition appellant is "to maintain satisfactory grades, attendance and citizenship."  ▆   The record shows compliance with that requirement is beyond appellant's capacity.[19] At the time of disposition he was 16 years old and in the 10th grade. According to the probation report, appellant's prior school performance was "fair to poor." He was currently attending Youth Opportunities Limited School, after being expelled from two high schools for fighting and truancy.

There is no evidence appellant has more than average abilities or could otherwise be reasonably expected to achieve more than overall satisfactory or "passing" grades.[20] As such, the probation condition imposed here bears no relationship to appellant's present or future criminality, was not narrowly drawn to serve the interests of public safety or rehabilitation, and was not specifically tailored to appellant's individual circumstances.[21] While a probation condition of satisfactory grades can be rationally related to rehabilitation and prevention of future criminality, it is fundamentally unfair to demand of appellant a level of school performance beyond his capacity, which would result in depriving him of his liberty.[22] We conclude the trial court abused its

---

[15] Welfare and Institutions Code section 730, subdivision (b).

[16] *In re Tyrell J.* (1994) 8 Cal.4th 68, 81 [32 Cal.Rptr.2d 33, 876 P.2d 519].

[17] *In re Bernardino S.* (1992) 4 Cal.App.4th 613, 622 [5 Cal.Rptr.2d 746]; accord, *People v. Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545].

[18] *In re Josh W.* (1997) 55 Cal.App.4th 1, 5 [63 Cal.Rptr.2d 701].

[19] *In re Robert M.* (1985) 163 Cal.App.3d 812, 815–818 [209 Cal.Rptr. 657] (probation could not be revoked for failure to achieve "satisfactory" grades where appellant had IQ of 70 and was placed in class five grades above the established level of his reading and math skills).

[20] A passing grade has been defined as not failing, such as D or above in an A through F grading system. (*In re Angel J.* (1992) 9 Cal.App.4th 1096, 1102, fn. 7 [11 Cal.Rptr.2d 776].)

[21] *In re Babak S.* (1993) 18 Cal.App.4th 1077, 1084 [22 Cal.Rptr.2d 893].

[22] *In re Robert M., supra,* 163 Cal.App.3d 812, 816–817.

discretion by requiring appellant to maintain a "B" grade average.[23] Accordingly, we remove that requirement while leaving intact the condition appellant maintain "satisfactory" grades, attendance, and citizenship.

## DISPOSITION

The order under review is modified as follows: The words "maintain B average" are ordered stricken from condition number 40 of the conditions of probation of the juvenile court's minute order dated September 11, 2002. In all other respects, the order is affirmed.

Perluss, P. J., and Woods, J., concurred.

On September 18, 2003, the opinion was modified to read as printed above.

---

[23] We do not mean to suggest a trial court may never impose a condition requiring a probationer to meet a defined academic standard, such as maintaining a "B" average. But before a court imposes such a condition it should possess reliable evidence the probationer has the intellectual capacity to meet that standard—based on past performance or intelligence tests or some other measure. No one should face the prospect of losing their liberty because they only have an average, or below average IQ.