Filed 7/24/13  In re Joshua D. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8,1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re JOSHUA D., a Person Coming Under the Juvenile Court Law. | B243452 |
| | (Los Angeles County Super. Ct. No. TJ20092) |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>JOSHUA D.,<br><br>        Defendant and Appellant. | |

        APPEAL from an order of the Superior Court of Los Angeles County, Tamara Hall, Judge.  Affirmed.

        Lynette Gladd Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

        Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews and Connie H. Kan, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Joshua D. appeals from the juvenile court's order declaring him a ward of the court after finding he had committed robbery. Joshua contends the admission of hearsay testimony was prejudicial error. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Petition*

Jaime Sanchez, a sidewalk ice cream vendor in Compton, was assaulted and robbed of ice cream by several youths. The district attorney filed Welfare and Institutions Code section 602 petitions against Joshua, Jasmine W. and A.W., alleging each of them had committed the second degree robbery of Sanchez in violation of Penal Code section 211. Jasmine admitted the allegation, and the juvenile court sustained her petition, declared her a ward of the court and ordered her home on probation. Thereafter, Joshua and A.W. were the subjects of a joint jurisdiction hearing.

2. *The Jurisdiction Hearing*

Jaime Sanchez testified he was pushing his ice cream cart out of the park on the afternoon of June 4, 2012, when Joshua and another boy called out to him for ice cream. Sanchez stopped in front of a house and waited for Joshua and the other boy to come up to the cart. As Joshua stood beside Sanchez, the other boy pulled open the lid of the cart, threw it on the ground and grabbed some ice cream bars. Sanchez told him to stop and shoved the cart towards the boy. Joshua struck Sanchez in the face with his fists. After the first punch, Sanchez attempted to hit Joshua with the bells on top of the cart, but he was overpowered by Joshua, who continued punching Sanchez in the face, causing him to fall back against a fence. Two girls arrived immediately after the assault. They took some ice cream bars from Sanchez's cart and fled with the boy. Joshua left shortly thereafter. Sanchez suffered swollen eyes, a broken nose and a cut lip. In a field show up conducted by Los Angeles County Sheriff's Deputies, Sanchez identified Joshua as the person who had punched him and A.W. and Jasmine as the two girls who had taken his ice cream bars.

2

Casilda Tovar looked out of her house and saw Joshua punching Sanchez in the face. Tovar stood in her doorway and yelled at Joshua to stop the assault. Joshua let Sanchez go and stepped back. Two girls came up and were laughing as they took some ice cream bars from Sanchez's cart. Two other boys were standing about 10 feet away from Joshua, waiting for him. Joshua, the other boys, and the two girls then left together. In a field show up, Tovar identified Joshua to sheriff's deputies as the person who had punched Sanchez, and A.W. and Jasmine as the two girls who had taken the ice cream bars.

At the close of the People's evidence, Joshua's counsel moved to dismiss the petition pursuant to Welfare and Institutions Code section 701.1; the juvenile court heard and denied the motion.

Joshua did not testify or offer other evidence in his defense.[1]

With respect to Joshua, the primary issue was whether he had assaulted Sanchez for the purpose of aiding and abetting the robbery of Sanchez. Following argument by counsel, the juvenile court found beyond a reasonable doubt that Joshua had aided and abetted the commission of second degree robbery, a felony.[2]

### 3. *The Disposition Hearing*

The juvenile court declared Joshua a ward of the court, and ordered him into a nine-month camp community placement program and calculated the maximum term of confinement as five years.

---

[1] A.W. testified in her defense that Joshua, another boy and a girl approached Sanchez. According to A.W., the girl opened the lid of Sanchez's cart, helped herself to some ice cream, and fled. Joshua and Sanchez then began fighting. A.W. waited at the corner while her friend Jasmine retrieved some ice cream bars that were lying on the ground after the fight.

[2] The juvenile court found the People failed to prove beyond a reasonable doubt that A.W. had committed second degree robbery and dismissed the petition against her.

3

**DISCUSSION**

1. *The Disputed Testimony*

On direct examination, Deputy Alejandro Ramirez testified Jasmine had stated during an interview "that she was at the park and she saw . . . [Joshua and] . . uh -- Dosha? Or Daysha -- and another young Black running toward the ice cream man and I believe Daysha said, 'We're going to rob the ice cream man.'" Overruling the hearsay objection of Joshua's counsel, the juvenile court admitted the testimony as an admission of a coconspirator in furtherance of the conspiracy's objective pursuant to Evidence Code section 1223**3**, an exception to the hearsay rule.

2. *Admission of the Disputed Testimony Was Harmless Error*

The People's theory throughout the jurisdiction hearing was that Joshua had aided and abetted the robbery by attacking and injuring Sanchez so Joshua's accomplices could steal Sanchez's ice cream bars from his cart. By seeking to introduce Deputy Ramirez's testimony of what Jasmine told him had been related to her by Daysha, the People were attempting to demonstrate Joshua's specific intent to permanently deprive Sanchez of his property.

Joshua contends the juvenile court committed prejudicial error when it failed to exclude this disputed testimony.[4] Deputy Ramirez's testimony regarding what Jasmine said had been told to her by Daysha was, without question, a classic example of inadmissible "double-hearsay." (See Evid. Code, § 1200, subd. (b); *People v. Zapien*

---

**3** Evidence Code section 1223 provides: "Evidence of a statement offered against a party is not made inadmissible by the hearsay rule if: [¶] (a) The statement was made by the declarant while participating in a conspiracy to commit a crime . . . and in furtherance of the objective of that conspiracy; [¶] (b) The statement was made prior to or during the time that the party was participating in the conspiracy; and [¶] (c) The evidence is offered either after admission of evidence sufficient to sustain a finding of the facts specified in subdivisions (a) and (b) or, in the court's discretion as to the order of proof, subject to the admission of such evidence."

**4** We review the court's decision to admit evidence for abuse of discretion. (*People v. Vieira* (2005) 35 Cal.4th 264, 292.)

(1993) 4 Cal.4th 929, 950-952.) The People do not assert any applicable exception for the admission of Jasmine's statement to Ramirez and for Daysha's purported statement to Jasmine. The latter did not qualify for admission under Evidence Code section 1223 in the absence of any independent evidence of a conspiracy involving Daysha and Joshua to rob Sanchez. (*People v. Hardy* (1992) 2 Cal.4th 86, 139 ["'Evidence of a hearsay "statement" of a coconspirator is inadmissible against the defendant in the absence of "'independent evidence to establish prima facie the existence of … [a] conspiracy.'"].) Indeed, apart from the disputed testimony, nothing in the record suggested someone named Daysha had any connection with Joshua, was present during the robbery, or participated in any phase of the crime. While this multiple hearsay testimony was therefore not properly admitted, in light of the other evidence before the juvenile court, any error was plainly harmless, whether viewed through the prism of federal constitutional law (*Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 17 L.Ed.2d 705] or state law (*People v. Watson* (1956) 46 Cal.2d 818, 836).

Robbery is the felonious taking of personal property in the possession of another from his or her person or immediate presence, and against his or her will accomplished by means of force or fear. (Pen. Code, § 211; *People v. Whalen* (2013) 56 Cal.4th 1, 69.) A necessary element of the crime is the specific intent to permanently deprive the owner of his or her property. (*People v. Anderson* (2011) 51 Cal.4th 989, 1002.) An aider and abettor of a specific intent crime like robbery shares the perpetrator's specific intent when he or she knows of the perpetrator's criminal purpose and aids, promotes, encourages, or instigates the perpetrator with the intent of encouraging or facilitating the commission of the crime. (*People v. Houston* (2012) 54 Cal.4th 1186, 1224.) Neither mere presence when a crime is committed, nor failure to prevent it, is sufficient, although those factors, as well as companionship, conduct before and after the offense, and flight may be considered in determining a defendant's criminal responsibility. (*People v. Garcia* (2008) 168 Cal.App.4th 261, 272-273*; In re Juan G.* (2003) 112 Cal.App.4th 1, 5.)

Here there was ample evidence from which a reasonable trier of fact could infer that Joshua aided and abetted the robbery of Sanchez. Joshua and the other boy, together,

called out to Sanchez for ice cream and approached his cart. As Joshua stood beside Sanchez, the boy removed the lid from the cart and began to remove the ice cream bars. When Sanchez yelled and shoved his cart at the boy to stop the theft, Joshua pummeled Sanchez in the face, enabling the boy to flee with the ice cream bars. Joshua soon followed.

This evidence, even without the disputed testimony, is sufficient to demonstrate Joshua's specific intent to facilitate the theft of Sanchez's property by physically disabling him.

## DISPOSITION

The order is affirmed.


ZELON, J.


We concur:


PERLUSS, P. J.


WOODS, J.