Filed 11/6/13  P. v. Jarmon CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KEYOSHA JARMON,<br><br>    Defendant and Appellant. | B242385<br><br>(Los Angeles County<br>Super. Ct. No. TA120124) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Laura R. Walton, Judge.  Affirmed.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Susan Sullivan Pithey and Rene Judkiewicz, Deputy Attorneys General for Plaintiff and Respondent.

_____

Keyosha Jarmon appeals from the judgment entered after a jury convicted her on two counts of robbery.  She challenges the sufficiency of the evidence to support the convictions.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1.  *Charges*

Jarmon was charged in an information with two counts of second degree robbery (Pen. Code, § 211), with an allegation as to each count that a principal in the commission of the offense was armed with a firearm (a handgun) (Pen. Code, § 12022, subd. (a)(1)). Represented by counsel, Jarmon pleaded not guilty and denied the arming enhancements.

2.  *Summary of the Evidence Presented at Trial*

   a.  *The prosecution evidence*

At around midnight, Juan Marentes was looking down at his iPod while walking on the sidewalk near his sister's house.  Glancing up, he noticed a man and a woman crossing the street and walking towards him.  Marentes stepped onto the parkway to let them pass on the sidewalk, and the couple separated.  The man stopped next to Marentes, produced a handgun and pointed it at Marentes's abdomen.  The woman, later identified as Jarmon, walked around Marentes and stepped down into the street.  The man, Jarmon's boyfriend, began searching Marentes's pockets and removed some cigarettes, while Jarmon snatched the iPod from Marentes's hand.  Marentes turned away from the boyfriend, quickly grabbed his iPod from Jarmon and started heading towards his sister's house, flanked by the boyfriend and Jarmon.  As the three of them were walking, the man continued pointing his gun at Marentes, who urged the boyfriend not to hurt him.

Marentes looked up and saw Vicente Venegas in his front yard.  Venegas owned the house in front of the house in which Marentes's sister lived and had seen the boyfriend and Jarmon "pushing" Marentes on the sidewalk.  When Marentes, Jarmon and the boyfriend arrived at Venegas's front yard, the boyfriend walked through the gate and was met by Venegas.  The two men engaged in a brief scuffle.  In the meantime, Jarmon entered the yard and stood next to her boyfriend, followed by Marentes, who stood

2

behind Venegas. The boyfriend pointed the gun at Venegas's head and pulled out a wallet, containing $200, from Venegas's pocket. Marentes shouted for help, and Jarmon and her boyfriend fled together, crossing the street and running towards an alley.

Robert Kelley was driving in the area when he saw a man chasing Jarmon. Kelley stopped and Jarmon jumped into his car and told him to drive. Kelley drove until stopped by police, who arrested Jarmon.

Detective Jose Carias of the Los Angeles Police Department examined Jarmon's cell phone and found a text message which had been sent about an hour before the robberies. The message read in part, "But we Finna hit this lick and off to u." According to Carias, in specific areas of Southern California, individuals who are not necessarily gang members use "lick" as street slang for robbery. Carias testified in armed street robberies, there is typically a gunman and an accomplice who assists the gunman by removing the property from the victim.

b. *The defense evidence*

The defense called Los Angeles Police Officer Michael Lanza to impeach Marentes's testimony. Lanza testified that, in an interview, Marentes told him he pushed Jarmon's hand away when she attempted to remove some property from his pockets, but never mentioned Jarmon taking his iPod. Lanza further testified Marentes said that, in trying to get away, he encountered Venegas on the street; Venegas then started to return home, but was stopped on his driveway by the armed man. Marentes never said the boyfriend and Jarmon walked into Venegas's front yard.[1]

Jarmon testified she was 18 years old on the night of the robberies and on a date with J-Mac, her new boyfriend. Jarmon acknowledged she wrote the text message, "But we Finna hit this lick and off to you." However, Jarmon testified she did not know what "lick" meant, J-Mac told her to write the message, and she complied because he was older and more knowledgeable than she, and she trusted him.

---

1      On cross-examination, Marentes denied making these statements to Officer Lanza.

At some point during their date, J-Mac retrieved something from his car and asked Jarmon to take a walk with him. When they encountered Marentes, J-Mac let go of her hand and began patting Marentes's pockets and demanding his keys and wallet. Jarmon initially thought J-Mac was joking, but when she saw Marentes's reaction, she became frightened. Jarmon testified she never saw J-Mac point a gun a Marentes and denied taking his iPod. She also claimed Marentes hit her while J-Mac was patting him down.

Later, as three of them were walking down the street, Jarmon turned and saw Marentes enter a front yard, followed by J-Mac. Venegas was on the front porch. Jarmon testified she never entered the front yard; when she saw J-Mac point a gun at Venegas's head, she fled and flagged down a passing motorist, who drove her away. Jarmon denied helping J-Mac commit the robberies and was shocked and frightened by what happened. Jarmon also testified she resented J-Mac "do[ing] something around me that I had no idea about."

### 3. *Verdicts and Sentencing*

A jury convicted Jarmon on both counts and found true the arming enhancements. The trial court suspended imposition of sentence and placed Jarmon on three years of formal probation.

**DISCUSSION**

### 1. *Standard of Review*

To assess a claim of insufficient evidence in a criminal case, "we review the whole record to determine whether any rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support

4

of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

2. *There Was Sufficient Evidence Jarmon Aided and Abetted the Robberies*

Robbery is the felonious taking of personal property in the possession of another from his or her person or immediate presence, against his or her will and accomplished by means of force or fear. (Pen. Code, § 211; *People v. Whalen* (2013) 56 Cal.4th 1, 69.) A necessary element of the crime is the specific intent to permanently deprive the owner of his or her property. (*People v. Anderson* (2011) 51 Cal.4th 989, 1002.) An aider and abettor of a specific intent crime like robbery shares the perpetrator's specific intent when he or she knows of the perpetrator's criminal purpose and aids, promotes, encourages, or instigates the perpetrator with the intent of encouraging or facilitating the commission of the crime. (*People v. Houston* (2012) 54 Cal.4th 1186, 1224.) Neither mere presence when a crime is committed, nor failure to prevent it, is sufficient, although those factors, as well as companionship, conduct before and after the offense, and flight may be considered in determining a defendant's criminal responsibility. (*People v. Garcia* (2008) 168 Cal.App.4th 261, 272-273*; In re Juan G.* (2003) 112 Cal.App.4th 1, 5.)

There was sufficient evidence Jarmon aided and abetted the robberies. The record shows Jarmon and her boyfriend together approached Marentes, and while her boyfriend searched Marentes's pockets at gunpoint, Jarmon took his iPod, although Marentes was able to retrieve it. Jarmon then walked on one side of Marentes, accompanied by her boyfriend, who walked on the other side of Marentes while continuing to point his gun at

5

Marentes. Jarmon followed her boyfriend into Venegas's front yard and stood next to him, as he took Venegas's wallet at gunpoint. Thereafter, the two of them fled together.

Jarmon contends the evidence was insufficient she knowingly aided and abetted the robberies because Marentes gave conflicting accounts as to where and how both robberies occurred and what, if any property was taken from Marentes. Jarmon argues the record leaves the "salient events" too uncertain to rule out reasonable doubt as to the more plausible scenario that Jarmon was simply on a date with her boyfriend, when he unexpectedly decide to engage in two robberies.

The conflicts and inconsistencies in the testimony were for the jury to resolve. (See *People v. Zamudio*, *supra*, 43 Cal.4th at p. 357.) While we must determine that the evidence is reasonable, credible and of solid value, we may not invade the province of the fact finder by reweighing the evidence, reevaluating the credibility of witnesses or substituting our own conclusions for the jury's findings. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206; *People v. Diaz* (1992) 3 Cal.4th 495, 541.) The evidence in the record was sufficient to sustain Jarmon's convictions for aiding and abetting the two robberies.

## DISPOSITION

The judgment is affirmed.

ZELON, J.

We concur:

PERLUSS, P. J.                    SEGAL, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

6