Filed 8/24/23  P. v. Williams CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ROBERT VINCENT WILLIAMS,<br><br>Defendant and Appellant. | B321615<br><br>(Los Angeles County<br>Super. Ct. No. NA065871) |

APPEAL from an order of the Superior Court of Los Angeles County, James D. Otto, Judge.  Affirmed.

John Steinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Allison H. Chung, Deputy Attorneys General for Plaintiff and Respondent.

In 2007, a jury convicted Robert Vincent Williams and a codefendant of murder and other crimes. In 2020, Williams filed a petition for resentencing under Penal Code section 1172.6.[1] The court held an evidentiary hearing on the petition and found beyond a reasonable doubt that Williams "is guilty of murder as a direct aider and abettor with the intent to kill."

Williams contends that the evidence is insufficient to support the court's finding. He also contends that evidence of his codefendant's jail telephone calls was inadmissible at the evidentiary hearing on his petition, and that the court erroneously failed to consider his youth at the time of his murder as a mitigating circumstance. We reject his contentions and affirm the court's order.

## FACTUAL AND PROCEDURAL SUMMARY

### A.  *The 2007 Trial*

In April 2007, the People charged Williams and codefendant, Keith Lee Jones, in a second amended information with the murder of Michael Green (§ 187, subd. (a)), having a concealed firearm in a vehicle (former § 12025, subd. (a)(1)), and carrying a loaded firearm while being an active participant in a criminal street gang (former § 12031, subd. (a)(2)(C)). The People

---

[1] Subsequent unspecified statutory references are to the Penal Code.

Williams filed his petition for resentencing under former section 1170.95, which the Legislature later renumbered section 1172.6 without substantive change. (Stats. 2022, ch. 58, § 10.) We hereafter cite to section 1172.6 for clarity and ease of reference. (See *People v. Reyes* (2023) 14 Cal.5th 981, 986 (*Reyes*).)

also alleged certain gang and firearm enhancements (§§ 186.22, subd. (b)(1)(A), 12022.53, subds. (b)–(e)(1)).  The People further alleged that Williams had a prior strike conviction and served a prior prison term for purposes of section 667.5, subdivision (b).

Williams and Jones were tried together before a single jury in 2007.  The evidence at that trial included the following:

Williams, Jones, Kassiem Warnick, Michael Sanders, and Kalup Hartley are members of the Rolling 20s Crips, a street gang in the Long Beach area.  Williams's gang moniker is Young Technique, or Tech.  The Rolling 20s are rivals of the Insane Crips, another Long Beach area street gang.

On the night of April 9, 2005, Michael Green was on a front porch outside the home of brothers Lionel and Lamar Jacobs on Olive Avenue in Long Beach near the intersection with 20th Street.[2]  Lionel was an Insane Crips member and Lamar was associated with that gang.

Three or four men walked toward the Jacobs's residence from across the street carrying guns.  The men called out Rolling 20s slogans and began firing their weapons toward the house.  Green was fatally shot.  One bullet hit Green in the face, severing his jugular vein.  A second bullet penetrated Green's hip; the coroner recovered a fragment of that bullet.

Police officers recovered numerous nine-millimeter and .40-caliber shell casings from the area near the murder scene.

---

[2] Because Lionel and Lamar Jacobs share the same last name, we will refer to them by their first names.  We intend no disrespect.

A woman who lived on 20th Street near the Jacobs's home testified that on the night of the murder she "heard a barrage of shots," then saw three men running from Olive Avenue to an alley behind her home. She saw one person with a gun and heard a "muddled argument" among the men, and "someone saying, 'you're a fool,' or, 'hey, fool,' or something like that." The men got in a car in the alley and drove away.

In the course of the police investigation, detectives recorded interviews with Lamar, Michael Wright, and Hartley. The prosecution played the recordings to the jury during the trial.

Lamar told the detectives he was on the front porch of his house with Green and two others on the night Green was killed. He saw Williams, Jones, Sanders, and Warnick walk toward the house with guns in their hands. As they approached, they "yell[ed] out" Rolling 20s gang slogans. Lamar turned and began to run around the side of his house to the back. Moments later he heard a volley of gunshots followed by a second volley. When the gunfire stopped, Lamar returned to the front yard and saw that Green had been shot. Lamar picked Williams's photo from a photo array and stated, " 'That's Tech [Williams]. I saw him approach [Green] with a gun in his hand.' "

Wright told detectives that he was outside the Jacobs's residence talking with Green, Lamar, and others on the evening of Green's murder. Wright saw an older white Cadillac drive up 20th Street past the residence twice and then park a short distance from the residence. Moments later he saw Jones, Sanders, and a third young black man he could not identify, each holding a handgun, walk toward them from across the street.

4

Jones stopped in the middle of the street, pulled out a black semiautomatic handgun, and fired it. Wright ran down the street while others ran into the Jacobs's backyard.

Hartley told police that on the day of Green's murder, he was in the back seat of a sports utility vehicle (SUV) driven by Jovan Barber. Jones and Sanders were also in the vehicle. Barber drove past the Jacobs's residence a few times, then parked the SUV in an alley off Olive Avenue. Williams soon pulled up behind them in a light-colored car with Warnick as his passenger. Jones and Barber got out of the SUV, joined Williams and Warnick in the alley, and walked away. Hartley and Sanders remained in the SUV. Moments later Hartley heard about 10 gunshots fired not far away. About a minute later, Williams, Jones, and Barber returned to the alley. Hartley heard another shot and seconds later Warnick appeared in the alley. The men got into the cars they arrived in and drove away.

On April 16, 2005—one week after Green's murder—Los Angeles County Sheriff's Department deputies observed Warnick throw a gun into a trash can at a park. The deputies recovered a loaded Beretta .40-caliber semiautomatic handgun from the trash can. Ballistics testing revealed that the gun had fired the .40-caliber shells found at the Green murder scene.

On May 24, 2005, a police officer observed Williams driving a new white Mustang with Barber in the front passenger seat. Later that day, police officers received a report that a passenger in a new white Mustang fired a gun in front of a residence on Pasadena Avenue near 20th Street in Long Beach. At the scene

5

of the shooting, officers recovered three shell casings from the curb in front of the residence.

Approximately an hour after the gunfire on Pasadena Avenue, police officers conducted a traffic stop of a new white Mustang at 20th Street and Long Beach Boulevard. Williams was the driver of the Mustang; Jones was the front passenger; and Barber was in the backseat. A search of the Mustang revealed a .38 caliber Colt revolver hidden in the driver's side of the center console and a loaded black Firestar semiautomatic nine-millimeter handgun in the passenger's side of the center console. The police arrested the three men.

Ballistics tests showed that the bullet fragment recovered from Green's hip, all seven nine-millimeter shell casings found at the Green murder scene, and the three shell casings found at the shooting on Pasadena Avenue earlier that day had all been fired from the Firestar handgun found in Williams's car.

After Jones's arrest, police recorded telephone conversations he made from jail. Jones referred to Hartley "getin' down on [him]" and how "that crushed [his] heart." Jones stated that police found "no fingerprints" on the guns found in "the car." In one call, Jones stated that there were multiple witnesses identifying him at the scene and one person saying he was a shooter, but that he "didn't shoot at all." Jones told another caller he had "dirt" on Lamar and Lionel Jacobs that he could use against them at trial, and complained that "the homies, they like snitching and stuff."

The jury found Williams guilty on each count, found the murder to be in the first degree, and found true each of the

gang and firearm enhancement allegations.  In a bifurcated proceeding, Williams admitted the prior strike and prison term allegations.  The court sentenced him to prison for 120 years to life.

Williams appealed and, in 2009, this court modified the judgment to correct certain sentencing errors, and affirmed the judgment as modified.  (*People v. Williams* (March 27, 2009, B203616) [nonpub. opn.].)

### B.    *Williams's 2020 Petition for Resentencing*

In November 2020, Williams filed a facially sufficient petition in the trial court for resentencing under the predecessor to section 1172.6.[3]  He also requested the court to appoint counsel to represent him.  The court thereafter appointed counsel, set a briefing schedule, and set a hearing to determine whether Williams made a prima facie showing for relief.

In October 2021, Williams's appointed counsel filed a second petition for resentencing under section 1172.6.  The court ordered the petition consolidated with Williams's pending November 2020 petition.

---

[3] In his resentencing petition, Williams describes his sentence as 120 years to life.  His counsel on appeal and the Attorney General also refer to his sentence as such.  Our 2009 opinion, however, reduced Williams's sentence to 75 years to life. We directed the trial court to prepare new abstracts of judgment reflecting these changes and to forward them to the Department of Corrections and Rehabilitation (DCR).  Although it is not clear from our record that the court prepared and transmitted the new abstracts to the DCR, we presume that the superior court officials performed their duty.  (Evid. Code, § 664.)

On January 25, 2022, the court found that Williams had made a prima facie case for relief under section 1172.6 and set an evidentiary hearing.

At the evidentiary hearing held on May 19, 2022, the People submitted without objection the reporter's transcripts of the 2007 trial and one volume of the clerk's transcript filed in Williams's direct appeal.[4] The clerk's transcript includes the transcripts of the recorded police interviews of Lamar, Wright, and Hartley, and the jail calls by Jones that were played to the jury in the 2007 trial. Neither the People nor Williams offered any additional evidence.

On June 1, 2022, the court denied the petition, finding that the People "have met their burden beyond a reasonable doubt of proving to the [c]ourt that [Williams] is guilty of murder as a direct aider and abettor with the intent to kill."

Williams timely appealed.

## DISCUSSION

At an evidentiary hearing held pursuant to section 1172.6, the prosecution has the burden of proving "beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by [Senate Bill No. 1437]." (§ 1172.6, subd. (d)(3).) Although the law as amended by Senate Bill No. 1437 now precludes liability for murder based upon the natural and probable consequences doctrine (*Reyes*, *supra*, 14

---

[4] We granted the People's unopposed motion for judicial notice of the record in *People v. Williams*, *supra*, B203616, which includes the reporter's transcripts of the 2007 trial. The People also transmitted electronic copies of the reporter's transcripts to this court.

Cal.5th at p. 986) and narrowed the scope of the felony murder rule (*People v. Strong* (2022) 13 Cal.5th 698, 708), a defendant who is not the actual killer can still be guilty of murder as a direct aider and abettor of the actual killer. (*People v. Gentile* (2020) 10 Cal.5th 830, 848 (*Gentile*).) " 'Under a direct aider and abettor liability theory, the prosecution must prove the person who is not the actual killer "engaged in the requisite acts [actus reus] and had the requisite intent [mens rea]" to aid and abet the target crime of murder.' [Citation.] A direct aider and abettor's 'guilt is based on a combination of the direct perpetrator's acts and the aider and abettor's *own* acts and *own* mental state.' [Citation.] ' "The aider and abettor doctrine merely makes aiders and abettors liable for their accomplices' actions as well as their own. It obviates the necessity to decide who was the aider and abettor and who [was] the direct perpetrator or to what extent each played which role." ' " (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1252.)

We review the trial court's denial of a section 1172.6 petition after an evidentiary hearing for substantial evidence. (*Reyes*, *supra*, 14 Cal.5th at p. 988; *People v. Vargas* (2022) 84 Cal.App.5th 943, 951.) "Under this standard, we review the record ' " 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " ' " (*Reyes*, *supra*, at p. 988.)

Here, the evidence submitted to the court at the evidentiary hearing included the testimony given at Williams's 2007 trial and the recordings of the police interviews of Lamar and Hartley. In Lamar's police interview, he told detectives that

Williams was one of four members of the Rolling 20s gang—a rival of Lamar's gang, the Insane Crips—who approached his house with guns in hand yelling Rolling 20s slogans. Moments later, as Lamar fled, volleys of bullets were fired and Green was fatally shot. Hartley also identified Williams as one of the four men who walked together from a nearby alley that night and, after shots were fired, returned together to their cars and fled. The nine-millimeter semiautomatic gun that fired at least one of the bullets that hit Green was fired from a gun later found in Williams's car. Even if the evidence does not establish that Williams was a person who actually shot Green, the evidence is sufficient to support the court's reasonable inferences that the Rolling 20s gang member who did shoot Green acted with the intent to kill, that Williams shared that intent, and that his participation in the shooting aided and abetted the actual killer. (See *People v. Campbell* (1994) 25 Cal.App.4th 402, 409–410 [in determining whether defendant aided and abetted a crime, relevant factors are defendant's presence at the scene, companionship with the perpetrator, and concerted action before and after the offense]; see also *People v. Burgos* (2022) 77 Cal.App.5th 550, 559–560 [same]; *In re Juan G.* (2003) 112 Cal.App.4th 1, 5 [same].)

Williams highlights the fact that neither Hartley nor Lamar actually saw Williams fire a gun. Williams points out that Hartley was sitting in Barber's SUV in the alley when the shooting took place; thus, he "did not witness the shooting and could not identify the perpetrator or perpetrators." And although Lamar identified Williams as a person who " 'approach[ed] [Green] with a gun in his hand,' " Williams states that Lamar "failed to establish [Williams's] role in the shooting" and he "did

10

not see the shooting or identify the perpetrator or perpetrators." Substantial evidence, however, is not limited to direct evidence; it "encompasses circumstantial evidence and any reasonable inferences to be drawn from such circumstantial evidence." (*People v. Lopez* (2013) 56 Cal.4th 1028, 1070.)  As set forth above, the court could reasonably infer from the totality of the evidence that Williams was a direct aider and abettor of Green's murder.

Williams also contends that the transcripts of the recordings of Jones's jail calls are inadmissible under the *Aranda/Bruton*[5] rule.  Under that rule, a statement by one codefendant that implicates another codefendant is inadmissible in a joint trial; if the multiple-defendant case is not severed, the statement must be either redacted to eliminate references to the implicated codefendant or excluded.  (*People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 749.)[6]

Williams did not object to the admission of the transcripts at the evidentiary hearing and has therefore forfeited the argument on appeal.  (See *People v. Valdez* (2012) 55 Cal.4th

---

[5] *Bruton v. United States* (1968) 391 U.S. 123; *People v. Aranda* (1965) 63 Cal.2d 518.

[6] At the outset of the 2007 trial, the prosecution indicated it intended to introduce recordings of Jones's jail calls.  The court asked whether there would be any "*Aranda* issues."  The prosecutor told the court that there are no such issues because any statements the prosecution would use would "be sanitized" of incriminating statements against Williams.  Excerpts of certain recordings of Jones's calls were thereafter introduced in the 2007 trial over Williams's *Aranda/Bruton* objection.  In his direct appeal, Williams did not assert any error with respect to the use of Jones's calls.

11

82, 130; Evid. Code, § 353.) Even if the argument had been preserved for appeal, Williams has failed to point to any statement in the transcripts of Jones's jail calls that implicates Williams. Nor has our review of the record revealed any such statement. Accordingly, the *Aranda/Bruton* rule has no application here. [7]

Williams further argues that the evidence is insufficient to show that he "was the actual killer." The court, however, did not find that Williams was the actual killer, and the court's denial of the petition did not require that finding. As discussed above, a defendant may be guilty of murder under the law after the enactment of Senate Bill No. 1437 if he is a direct aider and abettor of the actual killer; he need not be the actual killer. (*Gentile*, *supra*, 10 Cal.5th at p. 848.) This is the finding the court made, and that finding is supported by substantial evidence.

Williams next contends that the court failed to consider his alleged "youth"—he was 22 years old at the time of the murder. Williams points to the fact that the court's order denying his petition "did not address [his] youth as a mitigating factor[ ]." Williams does not cite to any authority requiring the court to address particular facts or factors explicitly in an order denying a section 1172.6 petition. To the extent the court was required to

---

[7] Williams argues that, if his trial counsel failed to preserve the *Aranda/Bruton* issue for appeal, he was deprived of the effective assistance of counsel. Because we reject on the merits the contention that the introduction of the jail call transcripts violated the *Aranda/Bruton* rule, counsel was not deficient for failing to object on that ground and, even if counsel was deficient, Williams has not shown that he was prejudiced as a result.

consider Williams's age, "we presume the trial court followed the law in exercising its duties and duly considered the evidence presented to it," and the failure to "mention certain evidence [in its ruling] does not mean that the court 'ignored' that evidence." (*People v. Jones* (2022) 86 Cal.App.5th 1076, 1092.)  Moreover, Williams asserted his youth argument in his written brief in the trial court, and the court, in its order denying the petition, stated that it had considered the parties' briefs and arguments.  For all these reasons, we reject Williams's contention that the court failed to consider his argument that his youth is a mitigating factor.

## DISPOSITION

The order denying Williams's petition for resentencing is affirmed.

NOT TO BE PUBLISHED.

ROTHSCHILD, P. J.

We concur:

CHANEY, J.

WEINGART, J.

13