Filed 9/30/14  In re Daniel S. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re DANIEL S., a Person Coming Under the Juvenile Court Law. | B252285 (Los Angeles County Super. Ct. No. YJ37422) |
| THE PEOPLE, Plaintiff and Respondent, v. DANIEL S., Defendant and Appellant. | |

APPEAL from An order of the Superior Court of Los Angeles County. Irma Brown, Judge.  Affirmed.

Elana Goldstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Analee J. Brodie, Brandon Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

_____

The juvenile court sustained a petition alleging that minor Daniel S. committed the offenses of second degree robbery (Pen. Code, § 211)[1] (count 1) and assault by means likely to produce great bodily injury (§ 245, subd. (a)(4)). The court granted minor's motion to reduce count 2 to a misdemeanor pursuant to section 17, subdivision (b). The juvenile court declared minor a person described by section 602 of the Welfare and Institutions Code and placed minor at home under terms and conditions of probation.

Minor appeals on the ground that the juvenile court erred in sustaining the petition because the evidence was insufficient to prove that he acted as an aider and abettor in the commission of the offenses.

**FACTS**

**Prosecution Evidence**

Just after midnight on May 26, 2013, Jinson Yu entered the gated area of his apartment complex on South Doty Avenue in the City of Hawthorne. There was no lock on the gate at that time. As Yu entered the opening alcove, he was watching a video on his cell phone, which he held in his hand. He was approached from behind by a Black male who extended his left hand and told Yu to give him the phone. The man mumbled something to the effect that he was holding a gun to Yu's side. Yu looked at the spot where the man's hand was pressed against him and saw no gun. Yu decided to "make a run for it."

The man grabbed Yu, who fell onto a staircase. While Yu yelled for help, the man managed to pry the phone from Yu's hands. The man ran toward the entry gate and Yu chased after him, demanding his phone. The man turned around and punched Yu in the face three or four times. Although dazed, Yu staggered after the man. Yu heard the man yell, "Do something, do something." At that point, Yu noticed another individual in the opening alcove, which was inside the gate. This was the only other individual in the

---

[1]    All further references to statutes are to the Penal Code unless stated otherwise.

vicinity, and it looked as if the man was addressing that person, whom Yu identified as minor in court.

Minor did not seem to be doing anything other than standing there. Yu grabbed his assailant again, but the man freed himself, and Yu fell. The assailant and minor ran out of the apartment complex together. Minor waited for the assailant to run before running along with him.

When asked about minor's demeanor, Yu testified that minor "just seemed to be shy" and "hesitant." He was fidgeting in place. At first Yu was confused as to why minor was not doing anything in response to Yu's cries for help. When he heard the assailant say, "Do something," Yu "assumed that they were accomplices." That was one of the reasons he did not chase after them when they ran out the gate. Yu said that, as far as he could tell, minor "wasn't actually doing anything."

Yu's face was swollen and two of his teeth were "punched in." He also suffered pain from the fall on the stairs and the "general wrestling."

Yu called 911 from his apartment and police arrived within 10 minutes. Police later took Yu to a field identification. Minor and another suspect had been detained approximately one block from Yu's apartment building after a patrol officer observed that they fit the description of the suspects. They were walking northbound on Doty Avenue. Yu identified the assailant and minor, and he was positive they were the two individuals involved.

**Defense Evidence**

Minor testified that he had known the assailant, an adult Black male, for approximately a day and a half at the time of the robbery. Minor knew him as "Tony." Minor had been helping a woman clear out an abandoned house that she had moved into, and Tony was working there as well. They worked until 8:30 at night on the day of the robbery and then attended a birthday party at the house until approximately 11:30 p.m. Because it was late, Tony offered to walk minor home. When they arrived at Yu's apartment complex, Tony typed something into the intercom, opened the gate, and went

3

inside. Minor sat down on the steps just outside the gate and waited for him. He waited approximately 10 minutes before he got up and began walking away.

As he walked southbound on Doty Avenue he heard someone screaming for help. He heard a commotion as he arrived at the last gate to the apartment complex. He noticed that two individuals, the victim and Tony, were in a "physical altercation." Minor did not know what to do and "just stood there and basically watched the fight." When he saw Tony knock "the Asian guy" on the floor, minor panicked. He ran northbound on Doty Avenue toward the lady's house where he had been working because "it was closer." Tony was running behind him. Minor intended to call his aunt from the house to get a ride home. No one answered the door. Minor began to walk southbound on Doty Avenue again.

As he walked, he noticed Tony pacing back and forth in front of an apartment complex. As minor passed him, a police car stopped nearby, and an officer called minor over to the car. When the officers noticed Tony, they called Tony over to the car also. At the time the police called minor to the car, he was 10 to 15 feet away from Tony. The police put minor and Tony in the back of the police car and then had them stand in front of the car to be identified.

When interviewed at the police station, minor told the police the same version of events as the one to which he testified, except he did not tell them that Tony had been at the scene of the crime. He was scared of going to jail or of Tony trying to retaliate against him for snitching. Minor did not know that Tony had robbed someone.

Minor testified that he thought Tony and the Asian were merely fighting. He heard the Asian say, "Come at me. Come at me." That is when Tony hit the Asian in the jaw. Minor did not think Tony had taken anything from the Asian. He did not think he was assisting Tony in "any kind of activity," nor was he acting as a lookout for him. On cross-examination, minor admitted he lied to police about when he had met Tony and Tony's involvement in the crime. He also lied when he told police where he had gone after leaving the apartment complex and where he had been just before being detained.

4

# DISCUSSION

## I.  Minor's Argument

Minor contends the juvenile court erred in finding all of the elements of aiding and abetting to be true based merely on minor's leaving the scene with the perpetrator. Minor's lack of involvement shows he was merely present at the scene and did not aid and abet the robbery or assault.

## II.  Relevant Authority

The standard of review in criminal cases applies to juvenile proceedings.  (*In re Roderick P.* (1972) 7 Cal.3d 801, 809.)  "The trier of fact, not the appellate court, must be convinced of the minor's guilt, and if the circumstances and reasonable inferences justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment. [Citation.]"  (*In re James B.* (2003) 109 Cal.App.4th 862, 872.)  "The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence.  [Citation.]"  (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

A single witness's testimony is sufficient to support a conviction, unless it is physically impossible or inherently improbable.  (Evid. Code, § 411; *People v. Young* (2005) 34 Cal.4th 1149, 1181; *People v. Scott* (1978) 21 Cal.3d 284, 296.)  "Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge . . . to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.  [Citation.]  We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence."  (*People v. Maury* (2003) 30 Cal.4th 342, 403.)

Section 31 provides, in pertinent part:  "All persons concerned in the commission of a crime . . . whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission," are principals.  Accordingly, it has long been the law that an "'aider and abettor is a person who, "acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the

5

commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime.""'" (*People v. Jurado* (2006) 38 Cal.4th 72, 136; *People v. Marshall* (1997) 15 Cal.4th 1, 40.)

One who knows another's unlawful purpose and intentionally aids, promotes, encourages, or instigates the crime is guilty as an aider and abettor of both the offense he or she intended to facilitate or encourage (the target crime) as well as any other crime committed by the person he or she aids and abets that is the natural and probable consequence of the target crime. (*People v. Prettyman* (1996) 14 Cal.4th 248, 259, 260-261; see also *People v. Mendoza* (1998) 18 Cal.4th 1114, 1133.) An aider and abettor need not have intended to encourage or facilitate the particular offense ultimately committed, and need not have had the specific intent otherwise required for the offense committed. (*Prettyman*, at p. 261.) The question is not whether the aider and abettor actually foresaw the additional crime, but whether, judged objectively, it was reasonably foreseeable. (*Mendoza*, at p. 1133.)

### III. Evidence Sufficient

At the outset, we conclude the juvenile court did not err in denying minor's motion under Welfare and Institutions Code section 701.1. "[T]he standard for review of the juvenile court's denial of a motion to dismiss is whether there is substantial evidence to support the offense charged in the petition. [Citation.] In applying the substantial evidence rule, we must 'assume in favor of [the court's] order the existence of every fact from which the [court] could have reasonably deduced from the evidence whether the offense charged was committed and if it was perpetrated by the person or persons accused of the offense. [Citations.] Accordingly, we may not set aside the [court's] denial of the motion on the ground of the insufficiency of the evidence unless it clearly appears that upon no hypothesis whatsoever is there sufficient substantial evidence to support the conclusion reached by the court below.' [Citations.]" (*In re Man J.* (1983) 149 Cal.App.3d 475, 482, fn. omitted.) In ruling on a motion to dismiss, the juvenile court weighs the evidence then before it and determines whether the People have proved

the petition beyond a reasonable doubt. (*In re Anthony J.* (2004) 117 Cal.App.4th 718, 727.)

After hearing lengthy argument on the motion, the juvenile court noted there was uncontroverted evidence that minor was present, was watching the proceedings, appeared to be nervous, and made no movement toward the victim. The fact that Tony appealed to minor for help was circumstantial evidence the perpetrator knew minor was there and expected some kind of participation from him. The court took the matter under submission, stating that the only arguable element was whether minor's conduct did in fact aid and abet the adult in commission of the crime. The court later ruled the evidence allowed for a reasonable inference that minor's position between the entrance and the point where the robbery was taking place—combined with his running away with the perpetrator, continued companionship with the perpetrator, and his deterrent effect on the victim—constituted sufficient evidence. We disagree with defendant's assertion that the court "waffled" or denied the motion solely on the fact that minor left the scene with Tony. The record shows the court gave due consideration to the elements of aiding and abetting and properly denied the motion based on all of the evidence presented at that point. (*People v. Smith* (1998) 64 Cal.App.4th 1458, 1464.)

Moreover, the totality of the evidence was sufficient to sustain the petition. Minor was not merely present at the scene of the robbery and assault. Based on the testimony of Yu and the discrepancies in minor's version of events and that of Yu, the juvenile court drew the reasonable inference that minor accompanied the perpetrator and shared his intent to rob the victim, a crime which led to the assault of the victim.

Yu testified that he heard someone step through the gate right behind him as he entered, and as he walked he heard the steps of the person following him. He deduced that the person who entered right behind him was the person who soon approached him just as he passed from the alcove into the connecting hallway. Although defense counsel challenged Yu on the fact he did not actually see the Black male pass through the gate, Yu was adamant that the perpetrator was the person he heard walking into the gate and then walking behind him. This contradicted minor's testimony that Tony punched in a

7

code at a different gate and entered the complex through that gate, and that minor sat and waited for him outside that gate. Minor's testimony that he got tired of waiting for Tony to exit and began walking, only to encounter Tony fighting with Yu at a gate farther down the street, was contradicted by Yu as well. Yu said that he saw minor inside the gate, standing in the alcove, watching the struggle between Yu and Tony. During this struggle, Tony yelled "Do something, do something." Tony's plea for help could only have been directed at minor, since no one else was in the area. Tony's plea to minor is evidence that he expected minor to help him escape from Yu, and strong evidence that minor shared Tony's intent to rob Yu of his phone. It is reasonable to infer that Tony and minor saw Yu entering the unlocked gate while intent on looking at a video on his phone and seized the opportunity to grab the phone by means of fear, and then force. Minor had no reason to enter the gate and wait in the alcove other than to follow Tony inside and aid and abet the robbery.

Moreover, minor was with Tony before the robbery and afterwards. Factors indicative of aiding and abetting include presence at the scene of the crime, the failure to attempt to prevent the crime from being committed, companionship, flight, and the defendant's conduct before and after commission of the crime. (*People v. Jones* (1980) 108 Cal.App.3d 9, 15.) Minor's presence was established by Yu's testimony, as was the fact that minor did nothing to intervene, either by word or action, when Tony began hitting Yu. Minor had worked with Tony for at least a day and a half, and he and Tony were walking together before the robbery. They were together afterwards as well, and as Yu testified, minor waited for Tony to break free from Yu before running away with him. According to Yu, they were side by side as they ran, and Tony was not behind minor as minor claimed. After Yu fell, his belief that he was facing two accomplices led him to desist rather than chase after them. Minor's conduct after the crime was also indicative of guilt, since he admittedly lied to police about several details regarding the events of that night.

Minor's case is analogous to that of *In re Juan G.* (2003) 112 Cal.App.4th 1 (*Juan G.*). In that case, Juan G. and Quincy D. approached the victim, a lone male, on

8

the street. (*Id*. at p. 3.)  Quincy D. said something to the victim.  When the victim did not understand, Quincy D. pulled a knife from his waistband and pointed it at the victim, demanding money.  The frightened victim surrendered his money to Quincy D.  While Quincy D. displayed the knife and robbed the victim, Juan G. stood next to him.  The victim felt "'threatened'" by Juan G.  (*Ibid*.)  Appellant and Quincy D. fled together after the money was taken, and they were later found walking together.  (*Id*. at p. 4.)  Juan G. testified he did not know Quincy D. had a knife or that he planned to rob the victim.  (*Ibid*.)  Like minor here, Juan G. argued he was not an aider and abettor but an "'unwitting bystander.'"  (*Id*. at p. 5.)

In affirming the juvenile court's finding, the reviewing court noted that Juan G. was present at the robbery and was in Quincy D.'s company immediately before the robbery and during the attempted escape.  (*Juan G.*, *supra*, 112 Cal.App.4th at p. 5; see also *In re Lynette G.*  (1976) 54 Cal.App.3d 1087, 1095 [minor found to have aided and abetted robbery when she was present at the crime, watched perpetrator rob victim, fled with the perpetrator and two others, and remained with them until all were detained].)  The *Juan G.* court added that the juvenile court was not obligated to believe Juan G.'s testimony, and its decision to sustain the petition undeniably reflected its conclusion that Juan G. was not credible.  (*Id*. at pp. 5-6.)

In the instant case, the trial court explicitly stated that minor's version of events "stretched credibility," and we see no reason to disturb the court's conclusion on appeal.  Minor testified that Yu told Tony to "come at [him]."  Yu said he was yelling "Give me back my phone" when Tony turned around and punched him in the face.  Yu was "staggered and dazed from . . . being hit."  Yu still tried to get his phone back by grabbing the man but fell to the ground when the man shook him off. This description of the events does not suggest a belligerent Yu, who would challenge his assailant to go at him in a fight.  Minor's account of running back to the recently occupied house was also suspect, since he claimed he had attended a birthday party there until 11:30, but found no one home approximately a half-hour later.

Minor attempts to distinguish *Juan G.* by arguing that minor "*actively*" refused to help when the perpetrator begged for assistance, which, according to minor, showed that he consciously chose not to aid and abet. According to Yu, minor appeared hesitant in the instant before the assailant shook off Yu and fled with minor. Minor did not leave the scene until Tony had the phone in his grasp and ran away, at which point minor ran with him. Minor's actions reveal an instant of hesitation rather than an active refusal to help his companion. Moreover, minor stayed with Tony until they were spotted by police. (See *In re Lynette G.*, *supra*, 54 Cal.App.3d at p. 1095 [flight with perpetrator accompanied by failure to subsequently disassociate oneself from perpetrator is indicative of involvement in crime].)

Reversal on the ground of insufficient evidence is unwarranted unless "'upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) The facts of the instant case support the juvenile court's finding that minor was more than a mere presence at the scene, as he contended, and that he had knowledge of Tony's wrongful intentions and intended to aid, and did aid, commission of the crimes. As stated in *Juan G.*, *supra*, 112 Cal.App.4th at page 5, "Whether a person has aided and abetted in the commission of a crime is a question of fact, and on appeal all conflicts in the evidence and attendant reasonable inferences are resolved in favor of the judgment." Minor's claim is without merit.

## DISPOSITION

The order appealed from is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


                                        BOREN, P.J.

We concur:

        CHAVEZ, J.                    FERNS, J.*

_____

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice
pursuant to article VI, section 6 of the California Constitution.

10