Filed 11/23/15  P. v. Browning CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>TOREANO JOSEPHUS BROWNING,<br><br>Defendant and Appellant. | B261077<br><br>(Los Angeles County<br>Super. Ct. No. MA059956) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daviann L. Mitchell, Judge.  Reversed with directions.

Brad Kaiserman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Rene Judkiewicz, Deputy Attorney General, for Plaintiff and Respondent.

————————————

Toreano Josephus Browning (Browning) appeals the revocation of his probation. Browning contends that the court abused its discretion because the evidence does not establish that he violated the terms of his probation by willfully failing to complete various conditions, such as attend an anger management class and perform community service, in a timely manner.[1] We agree with Browning. No deadlines for the relevant terms and conditions of his probation were provided by the court or Browning's probation officer. Accordingly, we reverse and remand with instructions for the court to reinstate Browning's probation and also amend the terms and conditions of that probation by adding definite and reasonable deadlines for completion of the relevant terms and conditions.

## BACKGROUND

### I. Plea and grant of probation

Between May 13, 2013 and June 19, 2013, Browning, believing that his minor daughter was being sexually abused by other family members, made a number of threats against various members of his family, including his aunt, Shirley Browning, who he believed were directly or indirectly responsible for the alleged abuse.[2] Browning was subsequently arrested for making criminal threats (Pen. Code, § 422, subd. (a)). In September 2013, Browning's trial resulted in a hung jury.

In November 2013, Browning entered a no contest plea to making criminal threats against his aunt and was convicted. In exchange for waiving his presentence credits, the court ordered an eight-year suspended prison sentence and granted probation for a period of three years. Probation was conditioned on a number of terms, including the following: that Browning "serve 30 days [of] community labor or PAAWS [Probation Adult

---

[1] Browning also claims that the trial court erred by purportedly denying his right to effective counsel in connection with his sentencing following the revocation of probation. This claim is rendered moot by our finding that the trial court abused its discretion in revoking Browning's probation and, accordingly, we will not address that issue.

[2] The child was subsequently examined and "no evidence of sexual misconduct or abuse" was found.

2

Alternative Work Service program]" in California or out of state; "complete a 26-week anger management class approved by probation"; "cooperate with the probation officer in a plan for drug treatment and rehabilitation"; and pay various fines and fees.

Although the trial court cautioned Browning that the probation conditions would be "very strict," and although the court set deadlines for certain terms and conditions of Browning's probation,[3] it chose not to set deadlines for most of the conditions, including all of the conditions identified above.

## II.     Revocation of probation and imposition of sentence

On November 20, 2014, a little over a year into the probation, the trial court held a hearing in response to a report by Browning's probation officer. The trial court noted that the probation report stated that Browning had not completed the "work program" or "provided proof of enrollment in the community labor program," had not completed an "anger management" course "or cooperated in a plan for drug treatment and rehabilitation." At the hearing, Browning explained that he thought he had "three years to complete" these conditions and that his lack of compliance thus far with these conditions was due, in part, to being "homeless": "It's hard to go to work or . . . pay for programs when you're on the street or sleeping on a person's couch." The trial court remanded Browning into custody and set a probation violation hearing for the following month and ordered a follow-up probation report.

On December 10, 2014, the trial court held a hearing on Browning's purported probation violations. The prosecutor, who described Browning's alleged noncompliance as a "technical violation" of the terms of probation, submitted on the initial probation

---

[3] For example, the court ordered Browning "to report to the probation officer within 48 hours of his release." Similarly, with regard to the protective order entered with respect to the victim, Shirley Browning, the trial court directed Browning to "surrender to local law enforcement or sell to a licensed gun dealer any firearm" in his possession or control "within 24 hours" after service of the order.

3

report, prepared on October 28, 2014, and the probation officer's supplemental report, prepared on December 8, 2014.**4**

In the October report, the probation officer stated it "appears" that Browning was in violation of the following four probation terms: (1) enrolling and completing either a 30-day PAAWS program, or 30 days of community labor, because Browning did not provide proof of enrollment or progress; (2) attending a 26-week anger management program, because Browning did not provide proof of enrollment or progress in this program; (3) cooperating with the probation officer in a plan for drug treatment and rehabilitation, because Browning did not provide proof of enrollment or progress in this program; and (4) making payments of court-ordered fees and fines, because Browning made only one $20 payment on September 4, 2014. According to the October report, Browning told his probation officer that he did not enroll in an "anger management program, drug treatment program or PAAWS, because he . . . ha[d] [no] transportation or money," that he was forced to quit a job selling Kirby vacuums because his friend and housemate quit working at Kirby and, as a result, Browning was no longer able to get to work. It was the probation officer's conclusion that although Browning had to be "held accountable for only making one payment, not being enrolled in a 26 week anger management class, drug counseling or 30 days of community labor," he nonetheless should be given the "benefit of the doubt." Accordingly, the probation officer recommended that while Browning be found in violation of probation, he should also be given an opportunity to "show proof of progress in 26 week management class, drug and alcohol counseling class and 30 days of community labor or PAAWS."

In the December report, the probation officer noted that she interviewed Browning via video conference call on December 3, 2014. During the course of that call, Browning told the officer that he "will be focusing on enrolling and completing all of his court ordered programs . . . 'with a vigor.'" According to the officer, Browning appeared to be

---

**4** "[I]f the alleged violations are established by a report from the probation officer no other evidence need be considered." (*People v. Natividad* (1963) 222 Cal.App.2d 438, 442.)

"focused and clear on being in compliance with all of his conditions of probation." The probation officer, once again, recommended that while the trial court should find Browning in violation of his probation, it should also give him the benefit of the doubt; specifically, the probation officer recommended that Browning serve a suitable amount of time in custody, that a further progress report be ordered for January 29, 2015, and "that probation be continued on all the same terms and conditions."

At the December 2014 hearing, Browning[5] testified that since he was now receiving public assistance he had the money to "take these classes and make these payments." In support, he offered into evidence recent steps that he had taken to comply with the terms of his probation, including his "PAAWS registration" and his "narcotics registration." Browning further testified that he took his probation "very seriously": "I've reported, except for one month that I missed, . . . , I've walked to get there, so I'm taking this very seriously. [¶] . . . [¶] I only ask the court for an opportunity to prove to the court that I can [take] care of this stuff." In addition, Browning argued that probation should not be revoked for his failure to complete community service, complete courses on anger management and drug counseling, and pay his fines and fees, because under the terms of his probation he had a total of three years to meet these conditions.

After considering all of the evidence, including Browning's testimony, the trial court found that Browning violated his probation: "He failed to report to probation, as ordered; he failed to enroll and complete anger management, as ordered; he failed to enroll and complete community labor, as ordered; and he failed to enroll and complete drug counseling, as ordered . . . ." The court then terminated Browning's probation.

On December 15, 2014, the trial court, after re-reviewing the record, elected not to reinstate probation and, instead, imposed the suspended sentence. Browning filed a timely notice of appeal on December 16, 2014.

---

[5] Browning, as he did at the November 2014 hearing, appeared in pro per; he did so despite the trial court's "strong" recommendation that he utilize the services of the "stand-by counsel" so as to minimize the risk of being sent to prison.

## DISCUSSION

### I.    Standard of Review

We review the revocation of probation pursuant to an abuse of discretion standard. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 443, 445.)  "Although that discretion is very broad, the court may not act arbitrarily or capriciously; its determination must be based upon the facts before it."  An abuse of discretion will be found where the decision is arbitrary or irrational.  (*People v. Buford* (1974) 42 Cal.App.3d 975, 985.)

We apply the substantial evidence standard when reviewing a trial court's finding of a probation violation.[6] (*People v. Kurey* (2001) 88 Cal.App.4th 840, 848–849.) "[T]he facts supporting revocation of probation may be proven by a preponderance of the evidence." (*People v. Rodriguez, supra*, 51 Cal.3d at p. 439.)  However, the evidence must support a conclusion the probationer's conduct constituted a willful violation of the terms and conditions of probation.  (*People v. Galvan* (2007) 155 Cal.App.4th 978, 981– 982.)  A violation is not willful when the probationer is incapable of fulfilling the terms of probation, or where unforeseen circumstances prevent the probationer from satisfying the terms of probation.  (See, e.g., *Bearden v. Georgia* (1983) 461 U.S. 660, 672 [103 S.Ct. 2064, 76 L.Ed.2d 221]) [financial incapability]; *In re Robert M*. (1985) 163 Cal.App.3d 812, 816 [mental incapability]; *Galvan*, at pp. 984–985 [physical incapability]; *People v. Zaring*, (1992) 8 Cal.App.4th 362, 379 (*Zaring*) [unforeseen circumstances].)

*Zaring*, *supra*, 8 Cal.App.4th 362 is illustrative.  In that case, a defendant's probation was revoked after she was 22 minutes late to a court appearance.  She

---

[6] "Substantial evidence" is not synonymous with "any" evidence; instead, it "must be of ponderable legal significance. . . .  It must be reasonable . . . credible, and of solid value; it must actually be 'substantial' proof of the essentials which the law requires in a particular case." (*People v. Bassett* (1968) 69 Cal.2d 122, 138–139.)  The substantial evidence rule "does not mean we must blindly seize any evidence in support of the respondent in order to affirm the judgment.  The Court of Appeal 'was not created . . . merely to echo the determinations of the trial court.  A decision supported by a mere scintilla of evidence need not be affirmed on review.'" (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633.)

explained that she had arranged for a ride to court, but the ride fell through at the last minute due to a childcare problem. *Zaring* held the trial court abused its discretion by revoking probation because the defendant's violation had not been willful. (*Id.* at p. 379.) Nothing in the record in *Zaring* suggested the defendant's failure to appear was the result of "irresponsibility, contumacious behavior or disrespect for the orders and expectations of the court." (*Ibid.*) The court in *Zaring* also noted that judicial discretion requires "application of sound judgment that takes into consideration that life is not always predictable and that things do not always go according to plan." (*Ibid.*)

## II. The Trial Court Abused its Discretion in Finding Browning Violated the Terms of his Probation

Trial courts have broad discretion to prescribe probation conditions to foster rehabilitation and protect public safety. (*People v. Anderson* (2010) 50 Cal.4th 19, 26; *People v. Leon* (2010) 181 Cal.App.4th 943, 948–949.) Probation conditions are interpreted with "common sense." (*In re Ramon M.* (2009) 178 Cal.App.4th 665, 677–678.) "A probation condition should be given 'the meaning that would appear to a reasonable, objective reader.'" (*People v. Olguin* (2008) 45 Cal.4th 375, 382.) However, "[a] probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated' . . . ." (*In re Sheena K.* (2007) 40 Cal.4th 875, 890; *Leon*, at p. 949; *In re R.P.* (2009) 176 Cal.App.4th 562, 566.) A condition is sufficiently precise "if the terms have a plain commonsense meaning, which is well settled . . . ." (*People v. Rodriquez* (1975) 50 Cal.App.3d 389, 398.) "A probation condition which either forbids or requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application, violates due process." (*People v. Freitas* (2009) 179 Cal.App.4th 747, 750.)

Here, we find that the trial court abused its discretion because there was no substantial evidence that Browning willfully violated the terms and conditions of probation at issue.

7

First, with regard to Browning's purported failure to complete the mandated anger management and drug classes and perform the necessary community service in a timely manner, the evidence shows that this failure was not willful. The failure was due instead to the patent ambiguity of the terms of probation. The terms and conditions do not provide that Browning was required to meet these conditions or even show progress toward meeting these conditions by a certain date. Although the court warned Browning that the terms and conditions of his probation would be "very strict," it did not advise him that he must complete these conditions within a certain time period or even tell him that these conditions must be accomplished as soon as possible. In addition, neither of the probation reports contains any completion and/or progress dates for these conditions or otherwise indicates that the probation officer directed Browning to complete these conditions within a certain time frame and that he had failed to comply with those directions.

In the absence of any specific or general guidance with regard to completion dates from either the court or the probation officer, a reasonable person could easily conclude, as Browning apparently did, that he had the entire three-year probation period to meet these conditions. Because Browning was under no express obligation to meet these conditions by a specific date or within a certain time frame after being granted probation, his purported noncompliance with these conditions did not violate his probation.[7]

---

[7] Even if a reasonable person would necessarily conclude from the totality of the circumstances that, despite the lack of any guidance with respect to completion dates, these conditions had to be completed during the first few months of probation, the trial court still abused its discretion by revoking probation. The uncontradicted evidence (testimony by Browning and the probation reports) indicates that during much of the first year of his probation Browning lacked the financial resources necessary to complete these conditions. As a result, a failure by Browning in this regard was not willful because it was due to financial inability. (*Bearden v. Georgia*, *supra*, 461 U.S. at pp. 661–665.) In *Bearden,* a Georgia court ordered the defendant to pay a fine and restitution as a condition of probation. Although the defendant made one $200 payment, he was unable to pay the $550 balance and the court revoked probation and sentenced him to prison. The record showed the defendant was unable to find a job and had no assets or income, and thus had no ability to pay the fine. (*Id*. at pp. 662–663.) The Supreme Court held

8

Second, with regard to Browning's failure to make his April 2014 meeting with his probation officer, the evidence indicates that this failure was not the result of "irresponsibility, contumacious behavior or disrespect for the orders and expectations of the court." (*Zaring*, *supra*, 8 Cal.App.4th at p. 379.) Rather, the evidence suggests that Browning was trying to respect the court's probation order and that his failure to appear for the April 2014 meeting was due to an inability to do so. The evidence indicates that Browning reported to his probation officer every other month (although not always at the appointed day and time) and he did so even if it meant that he had to walk to his probation officer's office. The probation officer herself found Browning's efforts noteworthy: "'to [Browning's] credit, he reports on a consistent basis and tests negative for all narcotics.'"

---

that, under the due process clause of the Fourteenth Amendment, a trial court may not revoke an indigent's probation for failure to pay a fine or restitution "absent evidence and findings that the defendant was somehow responsible for the failure or that alternative forms of punishment were inadequate." (*Id.* at pp. 665–666; see *People v. Cookson* (1991) 54 Cal.3d 1091, 1096 [discussing *Bearden* with favor and noting that with regard to Penal Code section 1203.2, "it appears the Legislature sought to codify the *Bearden* holding"].)

Here, Browning testified that he had trouble finding work after initially being granted probation and that when he did eventually find work he lost it through no fault of his own. As a result, he was initially unable to pay for the classes or perform the community service. Browning further testified that at the time of the probation violation hearing, he was receiving public assistance—that is, he had the ability to pay for these classes—and that he had taken steps to complete these conditions by registering for those classes.

## DISPOSITION

The judgment is reversed.  The trial court is directed to reinstate Browning's probation, and amend the terms and conditions of that probation by adding definite and reasonable deadlines for the completion of the 30 days of community labor, the 26-week anger management course, and the drug treatment program.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


ROTHSCHILD, P. J.


CHANEY, J.

10