Filed 5/2/23  P. v. Wilson CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DALE WILSON,<br><br>    Defendant and Appellant. | D080335<br><br><br><br>(Super. Ct. No. SCD286386) |

APPEAL from a judgment of the Superior Court of San Diego County, Evan P. Kirvin, Judge.  Affirmed.

Andrea S. Bitar, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Nora S. Weyl, Deputy Attorneys General for Plaintiff and Respondent.

# I

## INTRODUCTION

Dale Wilson appeals a judgment of conviction after a jury found him guilty of aiding and abetting the robbery of a 17-year-old high school student (Pen. Code, § 211).[1] He argues the evidence was insufficient to support his conviction and the trial court committed instructional error when responding to a note it received from the jury. Relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), Wilson also asserts the court erred by imposing fines and fees on him without assessing his ability to pay them. Finding no merit to Wilson's arguments, we affirm the judgment.

# II

## BACKGROUND

Wilson challenges the sufficiency of the evidence supporting the jury's verdict. Therefore, "we set forth the facts here in the light most favorable to the judgment." (*People v. Lee* (2011) 51 Cal.4th 620, 625, fn. 5.)

One afternoon, 17-year-old N.R. stopped at a bank in downtown San Diego while he was walking home from school. He withdrew $60 from the bank ATM, folded the money, and placed the money in a money clip, which he stored in his pocket. He then entered a nearby convenience store.

As N.R. exited the convenience store, a male with whom N.R. was unfamiliar—later identified as Wilson, or Big D—approached N.R. and offered to sell marijuana to him. Soon after, a second male—later identified as Little D—joined them. N.R. declined Wilson's offer and started walking home. Wilson engaged N.R. in small talk and accompanied him as he walked away. Little D followed them, walked close behind them, and occasionally chimed into the conversation.

---

[1]     Further undesignated statutory references are to the Penal Code.

About five or ten minutes later, N.R., Wilson, and Little D approached a street intersection and Wilson said, "The dude with the dreads, though." N.R. thought Wilson's statement seemed out of place because they were not discussing hair or dreadlocks and he did not see anyone with dreadlocks in the vicinity. According to N.R., "[i]t just didn't seem like a natural thing to say in an unrelated conversation." Little D replied, "The dude with the dreads, though?"

Almost immediately afterwards, Little D approached N.R. from behind, placed him in a headlock, and dragged him behind a building. Little D threw N.R. to the ground, punched him in the face two or three times, and demanded that he empty his pockets. N.R. surrendered his wallet, his money clip, his cell phone, and several rings to Little D.

Wilson followed Little D as he placed N.R. in a headlock, pulled him behind the building, and robbed him. Wilson stood close by during the robbery—no more than 15 or 20 feet away—and kept looking back and forth, left and right. Throughout the incident, Wilson did not try to aid N.R., call for help, or tell Little D to stop. After N.R. handed over his belongings, Wilson and Little D casually walked away together.

Law enforcement obtained footage of the incident from two surveillance cameras, one of which shows Little D placing N.R. in a chokehold and pulling him offscreen. Footage from the same camera shows Wilson holding nothing in his hands prior to the attack. Consistent with this surveillance footage, N.R. did not recall Wilson holding anything in his hands before the attack. However, footage from the second camera shows Wilson holding something in his right hand immediately after the attack. According to N.R., the item Wilson held after the attack resembled the money he had withdrawn from the bank ATM.

At trial, N.R. testified that he believed Wilson played the role of the lookout during the robbery because he kept "looking around ... when [he] was attacked." N.R. testified that he believed Wilson also played the role of the shot caller because Wilson directed the conversation that took place before the attack and he generally seemed more dominant than Little D.

## III

## DISCUSSION

1. *The Evidence was Sufficient to Support the Conviction*

On appeal, Wilson contends there was insufficient evidence to support his conviction for aiding and abetting robbery. We disagree.

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) A person may be convicted of robbery if he or she was the perpetrator of the robbery or, alternatively, if he or she aided and abetted the commission of the robbery. (§ 31 ["All persons concerned in the commission of a crime, ... whether they directly commit the act constituting the offense, or aid and abet in its commission, ... are principals in any crime so committed."]; see also *People v. McCoy* (2001) 25 Cal.4th 1111, 1117 ["a person who aids and abets a crime is guilty of that crime even if someone else committed some or all of the criminal acts."].) " '[A] person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime.' " (*People v. Johnson* (2016) 62 Cal.4th 600, 630, quoting *People v. Beeman* (1984) 35 Cal.3d 547, 561.)

4

When we assess the sufficiency of the evidence to support a conviction, we apply the substantial evidence standard of review. (*People v. Beck & Cruz* (2019) 8 Cal.5th 548, 626.) Under that standard, " ' "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.] We determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.] In so doing, a reviewing court "presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' " (*Ibid.*) " 'A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict.' " (*People v. Penunuri* (2018) 5 Cal.5th 126, 142.)

Wilson argues the evidence established, at most, that he was present at or near the scene of the robbery—not that he affirmatively aided or encouraged Little D in the commission of the robbery. " '[I]t is well settled that aiding and abetting the commission of a crime require[s] some affirmative action.' " (*People v. Partee* (2020) 8 Cal.5th 860, 868, italics omitted.) Thus, aiding and abetting liability cannot be predicated solely on a defendant's mere presence at the scene of a crime or his or her knowledge about, and failure to prevent, a crime. (See *People v. Durham* (1969) 70 Cal.2d 171, 181; *In re Jose T.* (1991) 230 Cal.App.3d 1455, 1460.) "Such evidence may, however, be considered together with other evidence in determining that a person is an aider and abettor." (*Ibid.*)

Here, there was substantial evidence from which a rational jury could find that Wilson affirmatively aided Little D in the commission of the robbery. As N.R. testified, Wilson approached him outside of the convenience store and Little D joined them immediately afterwards. Wilson initiated N.R. in conversation and then, together with Little D, followed N.R. as he walked away. From this evidence, a jury could reasonably find that Wilson and Little D acted in concert with one another throughout their encounter with N.R. and, as part of their joint operation, Wilson assisted Little D in the robbery by instigating contact with N.R., the intended victim of the robbery. (*People v. Burgos* (2022) 77 Cal.App.5th 550, 560 [evidence was sufficient to support aiding and abetting robbery conviction, in part, because defendant "was a 'continuous constituent' of the group that committed the robbery— before, during, and after the offense"]; *In re Juan G.* (2003) 112 Cal.App.4th 1, 5 [same, where defendant approached victim together with perpetrator] (*Juan G.*); *People v. Campbell* (1994) 25 Cal.App.4th 402, 409 ["Together [the defendant and the perpetrator] approached [the victims], stopping closely in front of them. Their concerted action reasonably implies a common purpose"] (*Campbell*).)

Further, after Little D placed N.R. in a headlock and dragged him behind a building, Wilson did not attempt to stop Little D or seek help from others. Instead, he moved closer to them, remained no more than 15 or 20 feet away, and kept looking left and right. A jury could rationally find that Wilson engaged in these actions to watch out for approaching witnesses and intimidate N.R. while Little D robbed him, which are "textbook example[s] of aiding and abetting." (*Campbell, supra*, 25 Cal.App.4th at p 409; see *In re White* (2020) 9 Cal.5th 455, 464 [substantial evidence supported a finding that petitioner aided and abetted perpetrator by " 'keeping his eye up and

6

down the street' and acting as the 'lookout guy' "].) Indeed, N.R. himself described Wilson as the more dominant member of the duo and the lookout.

Evidence from after the robbery supports the jury's verdict as well. As noted, Wilson and Little D left the scene of the crime together, which supports a logical inference that they were acting in concert. (*Juan G., supra*, 112 Cal.App.4th at p. 5.) Further, there was evidence that, after the robbery, Wilson held an item in his hand resembling the money that N.R. had just withdrawn from the bank ATM—an item Wilson did not have in his hand just before the robbery took place. A jury could reasonably infer the item in Wilson's hand was N.R.'s money and, therefore, Wilson aided in the commission of the robbery by taking possession of stolen contraband.

Collectively, the evidence in the record also constituted substantial evidence from which a jury could find that Wilson knew of Little D's unlawful purpose and intended to commit, or encourage the commission of, the robbery. In particular, a jury could find Wilson harbored the requisite mental state and intent necessary to sustain the conviction based on the evidence that he initiated the contact with N.R., acted in concert with Wilson, stood close by during the robbery, failed to intervene or seek assistance as the crime was ongoing, acted as a lookout, received and helped abscond with stolen contraband, and left the crime scene with Wilson. (See *People v. Hill* (1998) 17 Cal.4th 800, 850–852 [defendant harbored mental state to support aiding and abetting robbery conviction because there was substantial evidence that he stood with the perpetrator, approached the victim with the perpetrator, and surrounded the vehicle in which the victim was seated— evidence that "suggest[ed] a preconceived plan of attack"].)

Because there was substantial evidence that Wilson affirmatively aided and assisted Little D in the commission of the robbery, and that he harbored

7

the requisite knowledge and intent while doing so, we conclude the evidence was sufficient to support Wilson's conviction for aiding and abetting robbery.

2. *The Trial Court Did Not Commit Instructional Error*

During jury deliberations, the jury sent a note to the trial court seeking clarification on the knowledge element of the jury instruction for aiding and abetting (CALCRIM No. 401). The note read, "The defendant knew that the perpetrator intended to commit the crime. [¶] By when does the defendant need to know? [¶] At the instant of [sic] the crime is committed? [¶] Or prior?" After consulting with counsel, the court responded to the note, "To be guilty of robbery as an aider and abettor, the defendant must have known that the perpetrator intended to commit the robbery either before or during the commission of the robbery. [¶] Please review Jury Instruction (CALCRIM) #401 for further guidance."

Wilson contends the trial court committed instructional error when it responded to the jury's note. Without citation to any relevant legal authorities, he asserts a defendant may be convicted as an aider and abettor only if he or she knows of the perpetrator's unlawful purpose *before* the perpetrator begins to commit the offense. The People contend that Wilson forfeited his argument by failing to object to the trial court's response or requesting a modification to the response. They further argue that the court's response was proper because an aider and abettor need not have advance knowledge of a perpetrator's unlawful purpose prior to the commission of the offense, so long as the aider and abettor obtains such knowledge during the commission of the offense.

We will address Wilson's instructional error argument to forestall a possible ineffective assistance of counsel claim and because he argues the error affected his substantial rights. However, we reject Wilson's argument

8

on the merits. Indeed, it is firmly entrenched in the caselaw that "advance knowledge is *not* a prerequisite for liability as an aider and abettor. 'Aiding and abetting may be committed "on the spur of the moment," that is, as instantaneously as the criminal act itself.' " (*People v. Swanson-Birabent* (2003) 114 Cal.App.4th 733, 742; see *People v. Cooper* (1991) 53 Cal.3d 1158, 1161 ["*a getaway driver who has no prior knowledge* of a robbery, but who forms the intent to aid in carrying away the loot during such asportation, *may properly be found liable as an aider and abettor of the robbery*"], italics added; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1148 ["the aider and abettor need not have advance knowledge of the crime or the perpetrator's intent"]; accord *People v. Montoya* (1994) 7 Cal.4th 1027, 1044–1045 ["if an individual happens upon a scene in which a perpetrator unlawfully has entered [a structure] with intent to commit a felony or theft, and, upon learning of that circumstance, forms the intent to facilitate the perpetrator's illegal purpose in entering, that individual incurs the liability of an aider and abettor" of burglary].) Based on these well-settled legal principles, we reject Wilson's argument that the trial court committed instructional error.

3. *The Challenged Fines and Fees are Affirmed*

During sentencing, the trial court imposed various fines and fees on Wilson, including a crime prevention fund fine of $41 (§ 1202.5), a court operations assessment of $40 (§ 1465.8), and a criminal conviction assessment of $30 (Gov. Code, § 70373). Wilson asserts the court erred in levying these fines and fees because he did not have the ability to pay them and the court never considered his ability to pay. Relying on *Dueñas, supra*,

9

30 Cal.App.5th 1157, Wilson asks us to "vacate [the] fines and fees ... unless and until it is demonstrated that [he] has the ability to pay."[2]

We reject Wilson's argument for two reasons. First, Wilson forfeited his argument by failing to object to the fines and fees based on his purported inability to pay. During sentencing, Wilson asked the court to consider "the needs of his family" and his "financial obligations" when assessing fines and fees, "consider reducing" a restitution fine (§ 1202.4, subd. (b)) and a parole revocation restitution fine (§ 1202.45) to the statutory minimum, and stay "the remaining fees" (presumably referring to the crime prevention fund fine, the court operations assessment, and the criminal conviction assessment). However, he never told the court he was indigent, nor did he request an ability-to-pay hearing or state he was unable to pay the fines and fees he now challenges. Because Wilson did not notify the court about his alleged inability to pay, or object to the fines and fees on this basis, he has forfeited his *Dueñas* argument. (*People v. Flowers* (2022) 81 Cal.App.5th 680, 687, review granted October 12, 2022, S276237; *People v. Keene* (2019) 43 Cal.App.5th 861, 863–864; *People v. Torres* (2019) 39 Cal.App.5th 849, 860.)

Second, even if we were to presume that Wilson preserved his *Dueñas* argument, and further presume that his argument was meritorious, we would nonetheless affirm the fines and fees because Wilson "will have the ability to earn prison wages over a sustained period." (*People v. Johnson* (2019) 35 Cal.App.5th 134, 139 (*Johnson*).) The court sentenced Wilson to a

---

[2] "In a nutshell, *Dueñas* ... held that a sentencing court violated the due process rights of a defendant who committed her acts out of poverty when it imposed certain mandatory fees and fines that lack a statutory exception without first making a finding the unemployed defendant (who suffered from cerebral palsy) had the ability to pay while she was on probation." (*People v. Oliver* (2020) 54 Cal.App.5th 1084, 1100.)

relatively lengthy aggregate prison term of 11 years, during which time he will have the opportunity to earn wages.[3] The probation report shows Wilson has a sustained history of employment and, during sentencing, Wilson himself emphasized that he has "always been working since [he] [last] got out of prison." Further, the fines and fees he challenges are relatively minimal, amounting to a mere $111 in total.

"While it may take [Wilson] considerable time to pay the amounts imposed against [him], it is clear [he] can make payments from either prison wages or monetary gifts from family and friends during [his] lengthy prison sentence[]." (*People v. Lowery* (2020) 43 Cal.App.5th 1046, 1060–1061; *Johnson, supra*, 35 Cal.App.5th at pp. 139–140.) Because Wilson will be able to pay the $111 in challenged fines and fees during his prison term, the trial court's purported failure to assess his ability to pay was harmless beyond a reasonable doubt.

IV

DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

O'ROURKE, J.

DO, J.

---

3    The court calculated the 11-year prison sentence as follows: the middle term of three years for the robbery conviction, doubled due to a prior strike conviction, plus five years for a prior serious felony.

11